**FIDELITY UNION LIFE INSURANCE COMPANY**

v.

**PROTECTIVE LIFE INSURANCE COMPANY and Carl Chapman.**

**No. CA 3–5407–C.**

United States District Court,
N. D. Texas,
Dallas Division.

Nov. 20, 1972.

Wm. Andress, Jr., Andress, Woodgate & Lodewick, Dallas, Tex., for plaintiff.

Joe Hill Jones, and John E. Agnew, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, Tex., for Ins. Co.

Ronald M. Holley, and Richard B. Turbiville, Passman, Jones, Andrews, Coplin, Holley & Co., Dallas, Tex., for Carl Chapman.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiff, Fidelity Union Life Insurance Company (hereinafter referred to as "Fidelity") requests this Court to enjoin Defendant, Protective Life Insurance Company ("Protective") from raiding Plaintiff's agents, and Plaintiff also requests damages for replacement costs of agents who left Fidelity and went to Protective. Fidelity further seeks to enforce a noncompetitive covenant prohibiting Defendant Carl Chapman from selling life insurance anywhere in Texas in the so-called college market.

Jurisdiction is governed by the provisions of 28 U.S.C.A. 1441(c) which reads as follows:

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the en-

tire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

### Issues

The issues may be posed by stating the positions taken by the respective parties. Fidelity contends that Protective has been raiding Fidelity's agents who have been trained at considerable expense, and who have a noncompetitive covenant in their employment contracts. As to Defendant Chapman, Fidelity contends the noncompetitive covenant in Mr. Chapman's contract should be enforced and that he should be barred from selling life insurance in the college market anywhere in Texas. On the other side, Protective denies that it has wrongfully interfered with the contractual relation between Fidelity and Fidelity's agents and contends that the noncompetitive covenant is unenforceable because it is unreasonably broad. Defendant Chapman also argues that the noncompetitive covenant is overly broad and therefore unenforceable. Thus, more narrowly drawn the principal issues are two: (1) whether Fidelity's noncompetitive covenant is enforceable and (2) whether Protective has wrongfully interfered with the contracts between Fidelity and Fidelity's agents.

### Facts and Conclusions of Law

Fidelity is engaged in the business of selling life insurance to college seniors and graduate students and so is Protective. Carl Chapman is a former Fidelity agent who now sells life insurance for Protective in the college market in Commerce, Texas. Mr. Chapman's contract with Fidelity contained the following noncompetitive covenant:

[A]gent agrees that he will not, for a period of two (2) years immediately following the termination of this contract for any reason, engage in any way, directly or indirectly, in any business or for any other company competitive with Fidelity Union Life Insurance Company in that specialized part of its business involving the specialty field of selling life insurance to college or university senior or graduate students, nor in the recruiting, training, or supervising of agents or employees to engage in this, the so-called College Market, in any State or States in which he has engaged in any way, as agent or employee for Fidelity Union in the sale of such special insurance policies during the period this contract was in effect. For violation of this provision the Agent agrees that the Company shall be entitled to an injunction . . . .

The college market has through the years become a lucrative but highly competitive area of the life insurance industry. Entering the college market in 1957 Fidelity became one of the pioneers in this specialized field and has since recruited and specially trained thousands of agents to concentrate on college seniors and graduate students. Fidelity did not long remain alone in the college market, however. To date, more than forty other insurance companies have entered this field and most all have short, concentrated training schools for agents entering college sales. In this specialized field of insurance sales not only is there great competition for purchasers, but also for talented salesmen. In an effort to recruit sales talent it is a common occurrence in the life insurance industry for one company to inquire whether independent agents of other companies are interested in a general agency.[1] Mr. Chapman testified that during 1971 a number of insurance companies called him about changing jobs and that such action was not uncommon.[2]

Mr. Chapman's association with Fidelity began in March of 1969 and ended less than three years later, on December

1. See Defendant's Exhibit #8.

2. Transcript of Proceedings p. 165 (hereinafter cited as Tr. p. ——).

1, 1971, when he began selling for Protective. Between March, 1969, and December 1971, the following events occurred: After completion of the special Fidelity training program Mr. Chapman went to College Station, Texas, the home of Texas A&M University and while there he sold $1,826,000 worth of life insurance in the college market and received almost $19,000 for his efforts. Despite this success, Mr. Chapman became dissatisfied with Fidelity because he lacked supervision and managerial assistance.[3] Consequently, in November of 1970 (and prior to any contact by Protective) Mr. Chapman contemplated a change and began to contact other insurance companies. When Fidelity became aware of Mr. Chapman's dissatisfaction it attempted to cure the problem by moving him to a different location. Still dissatisfied Mr. Chapman called Protective and he and his wife were flown to Alabama at Protective's expense for contract negotiations. Discovering the negotiations between Mr. Chapman and Protective, Fidelity reminded Mr. Chapman of his noncompetitive covenant and threatened him with a lawsuit if he left.[4] Under this pressure he decided to remain with Fidelity and moved to Huntsville, Texas, in February, 1971, where he became Fidelity's general agent. Negotiations with Protective were discontinued. In Huntsville Mr. Chapman remained generally dissatisfied when in October of 1971 he received a letter from Fidelity advising that new contracts were necessary but explaining that "Existing particulars relating to liabilities and other limitations are not changed."[5] An examination of the proposed contract revealed that not only was a noncompetitive covenant included but also a $6,000 liquidated damages clause. This proposed new contract was in Mr. Chapman's words, "The straw that broke the camel's back."[6] Mr. Chapman again called Protective, initiated contract negotiations, and tendered his resignation to Fidelity effective December 1, 1971. Fidelity responded by bringing this lawsuit.

The first principal issue is whether Fidelity's noncompetitive covenant is enforceable as written.[7] There was a time in our jurisprudence when noncompetitive covenants were held to be in restraint of trade and contrary to public policy. *See* Bramblet and Co. v. Hunt, 371 S.W.2d 787 (Tex.Civ.App.— Dallas 1963, writ ref'd n. r. e.).[8] Under

---

3. Tr. p. 142.

4. Tr. p. 149.

5. Defendant's Exhibit #2.

6. Tr. p. 204.

7. Writing about the subject of employee covenants not to compete in 1952, Judge Hoover, of the Ohio bench, commented in the following manner:
   This is not one of those questions on which the legal researcher cannot find enough to quench his thirst. To the contrary there is so much authority it drowns him. It is a sea—vast and vacillating, overlapping and bewildering. One can fish out any kind of strange support for anything, if he lives so long. Arthur Murray Dance Studios of Cleveland, Inc. v. Witter, 105 N.E.2d 685, 687 (Ohio 1952).

8. Judge Hoover commented further about the history of noncompetitive covenants:
   Over five hundred years of colorful history look down on this type of litigation. In the year 1415 Henry V was king. Skill in a trade was the vital factor in a man's economic status and it was obtainable only through apprenticeship to an experienced worker. The guild system permitted a man to work only in the trade in which he was apprenticed. Membership in a guild was not easily attained. Travel was difficult. Strangers were not welcome. If a man couldn't work at his trade in his particular locality, he could hardly work at all; might become a pauper; and the public would be deprived of a worker at a time when the Black Death had made workmen scarce. In that background when, in 1415, the celebrated Dyer's Case (Y.B.2 Henry V, pl. 26) came before Judge Hall, he became so enraged by an attempt to restrain a dyer from working in a town for just a half year that in bad French he cursed the deal void: "By God, if the plaintiff were here he should go to prison until he paid a fine to the king." Arthur Murray Dance Studios, note 7, *supra*, at 691.

the pressures of social, economic, industrial, communication and transportational change, the law has changed. The general rule in Texas today is that an agreement on the part of an employee not to compete with his employer is enforceable if reasonable in view of the circumstances peculiar to that case. Bramblet and Co. v. Hunt, *supra*; Lewis v. Krueger, Hutchison and Overton Clinic, 153 Tex. 363, 269 S.W.2d 798 (Tex. 1954); *See also* Newman, "Restrictive Covenants in Employment Contracts" 35 Tex.B.J. 225 (March 22, 1972). Of course, a determination of what is reasonable requires the Court to balance the conflicting interests of employer and employee while being ever mindful of the basic policies of individual liberty, freedom of contract, freedom of trade, protection of business, encouragement of competition and discouragement of monopoly.

■ In Texas the task of deciding reasonableness is twofold. First, a Court must determine whether the non-competitive covenant as written is reasonable. If the covenant is adjudged unreasonable it does not follow that the entire covenant is void; rather, Texas law holds that the contract may in effect be reformed to aid in the enforcement thereof. Weatherford Oil and Tool Co. v. Campbell, 161 Tex. 310, 340 S.W.2d 950 (Tex.1960); Spinks v. Riebold, 310 S.W.2d 668 (Tex.Civ.App.—El Paso 1958, writ ref'd). The Texas Supreme Court explained the law this way:

> Since the decisions in Lewis v. Krueger, Hutchison and Overton Clinic . . . and Spinks v. Riebold . . ., it can no longer be said that a covenant not to compete is void and unenforceable simply because it is not reasonably limited as to either time or area. These cases hold that although the territory or period stipulated by the parties may be unreasonable, a court of equity will nevertheless enforce the contract by granting an injunction restraining the defendant from competing for a time and within

an area that are reasonable under the circumstances. Weatherford, *supra*, 340 S.W.2d at 952.

■■ A noncompetitive covenant is reasonable if it does not impose upon the employee any greater restraint than is necessary to protect the business and good will of the employer. Weatherford Oil and Tool Co., *supra*. Pivotal factors in this reasonableness test are the time during which the restraint is to last and the area of restraint. Fidelity's noncompetitive covenant provides for a two year time restriction and an area restriction covering the entire state of Texas and any other state in which a Fidelity agent may have worked. The initial question is whether Fidelity's noncompetitive covenant is reasonable *as written*. The Court has concluded that the time restriction is reasonable but the area restriction is not.

In Weatherford Oil and Tool Co. v. Campbell, the Texas Supreme Court agreed that an area restriction was not reasonable and quoted the following language:

> [T]he restrictive covenant must bear some relation to the activities of the employee. It must not restrain his activities in a territory into which his former work has not taken him or given him the opportunity to enjoy undue advantages in later competition with his employer. 340 S.W.2d 950 at 952.

Numerous other Texas courts have relied on the reasoning in *Weatherford*: Orkin Exterminating Co. v. Veal, 355 S. W.2d 831 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n. r. e.) (covenant not to compete at certain stated locations for a period of two years held enforceable); Wilson v. Century Papers, Inc., 397 S. W.2d 314 (Tex.Civ.App.—Houston 1965, no writ hist.) (covenant not to compete for two years within City of Houston, Texas, held reasonable); Carl Coiffure, Inc. v. Mourlot, 410 S.W.2d 209 (Tex. Civ.App.—Houston 1966, writ ref'd n. r. e.) (covenant not to compete for one year within 10 miles of any beauty salon

of Plaintiff's in Harris County, Texas, held reasonable; Chenault v. Otis Eng. Corp., 423 S.W.2d 377 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.) (covenant not to compete in sale of oil field equipment for three years within 100 miles of Victoria, Texas, held reasonble); Holiday Hill Stone Prod., Inc. v. Peek, 387 S.W.2d 731 (Tex.Civ.App.—San Antonio 1965, no writ hist.) (covenant not to compete in selling cast stone or case brick within 700 miles of San Antonio, Texas, held reasonable); Traweek v. Shields, 380 S.W.2d 131 (Tex.Civ.App.—Tyler 1964, no writ hist.) (covenant not to compete as route man for one year within 75 mile radius of Houston, Texas, held reasonable); Mosimann v. Employers Cas. Co., 354 S. W.2d 171 (Tex.Civ.App.—Houston 1962, no writ hist.) (covenant not to compete in sale of insurance for two years within any district which salesman had been assigned held reasonable).

The effect of Fidelity's area restriction is to prohibit a former agent from selling in an area where the agent has never been, and in areas where Fidelity has not even entered the college market. As written this noncompetitive clause deprives a former agent of employment when he poses no threat whatsoever to the business of Fidelity. A noncompetitive covenant with these characteristics is unreasonable and unenforceable as written.

■ Having concluded that the covenant is unreasonable as written the Court turns to the second task required by Texas law: determine whether the noncompetitive covenant may be reformed to prevent Mr. Chapman from selling to the college market in the Commerce, Texas, area. When deciding whether an area restriction may be reformed and reasonably applied under the circumstances, it is helpful to ask the following questions: (1) What area does the employer's business cover? (2) What area did employee cover for employer? (3) From what area does the covenant bar the employee? (4) Is the employee barred from territory in

which the employer has no business? (5) Is employee barred from territory in which he never worked for employer? See Arthur Murray Dance Studios of Cleveland v. Witter, 105 N.E.2d 685 (Ohio 1952). Applying the elements of this case to these questions one finds the following: (1) Fidelity sells to the college market in Texas and forty-seven other states; (2) Carl Chapman worked for Fidelity in three Texas cities: College Station, Denton, and Huntsville; (3) Mr. Chapman is barred from selling insurance in the college market anywhere in Texas.; (4) The evidence is not conclusive as to whether Fidelity sells to the college market in Commerce, Texas; (5) Mr. Chapman never worked for Fidelity in Commerce, Texas. As an employee of Protective, Mr. Chapman has neither entered an area of Texas which his former work with Fidelity took him, nor has he taken customer lists which might provide him with undue advantage. To restrict Mr. Chapman from this area of employment would be unreasonable—and this, the Court refuses to do. Under different circumstances, however, former Fidelity agents could be barred for two years from selling in a particular area of Texas. For example, if a Fidelity agent working a specified area resigns and then enters the college market in that same area a court of equity could enjoin that agent by reforming the covenant to apply to those particular facts.

In summary, applying Texas law to this case, the Court has concluded that: (1) *as written* the area restriction in Fidelity's noncompetitive covenant is unreasonable and unenforceable and (2) even after reformation of the covenant Carl Chapman may not be barred from selling in the Commerce, Texas, area.

■ The other principal issue · is whether the soliciting by Protective of Fidelity's agents is a compensable tort. The short answer is that the evidence is insufficient to support Plaintiff's claim. As to Carl Chapman, he made the initial contact with Protective after becoming dissatisfied with Fidelity, and testified

that he was almost begging Protective for a job.[9] One Fidelity agent testified that he was personally contacted by a Protective employee about the advantages Protective could offer, but he was not interested in leaving Fidelity and has not done so.[10] Reportedly other Fidelity agents have been approached about working for Protective but none of them have left Fidelity.[11]

It should be noted that the retention rate is very low for new agents in the college market. For example, only fifteen or twenty percent of Fidelity's newly trained agents remain with the company after two years—after five years only ten percent remain.[12] Since Fidelity began its college program in 1957 some eight to ten thousand college market agents have left the company for a variety of reasons,[13] but Protective has hired only four former Fidelity agents within the last ten years.[14] One of these was Mr. Chapman, another was Mr. Manley Denton who went first to Mercantile Security Insurance Company and then to Protective. As to the other two, Mr. Leland Evans and Mr. Charles Thomas, the evidence does not reveal why they left Fidelity for Protective.

To be sure, as Plaintiff correctly points out, a person who induces a party to a contract to break it, intending to injure another person or get the benefit for himself, commits an actionable wrong. Robey v. Sun Record Co., 242 F.2d 684 (5th Cir. 1957); *compare with* United Insurance Co. v. Dienno, 248 F. Supp. 553 (E.D.Pa.1965) (where insurance agents were barred from using former employer's confidential customer lists) and American Republic Insurance Co. v, Union Fidelity Life Insurance Co., 295 F.Supp. 553 (D.C.Or.1968) (where insurance agents who terminated employment with one insurer and went to work for competitor where they used customer 'lists developed by former em-

ployer were guilty of unfair competition). However, actionable wrongs such as these are not here supported by the evidence.

Accordingly, Plaintiff's requests for injunctive relief and damages are denied.

---

9. Tr. p. 198.

10. Tr. p. 93.

11. Tr. pp. 63–64.

12. Tr. p. 127.

13. *Id.*

14. Tr. p. 228.