Opinion filed August 29, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00258-CV

_____

## IN THE MATTER OF THE ROBINSON FAMILY ENTITIES

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 48,534**

### MEMORANDUM OPINION

This is an appeal from an order that the trial court entered in connection with a receivership proceeding. We reverse and remand.

According to the record in this case, "Robinson Family Entities" is essentially a family-owned business that is owned in one way or another by certain members of the Robinson and Crownover families and their various entities. Disputes arose regarding the management of the business, and to resolve these disputes, as well as others that could arise in the future, certain members of the

families entered into a voting agreement. Future disputes eventually arose, and in May 2012 certain members of the families entered into a mediated settlement agreement (MSA) in an effort to resolve those disputes.

Under the provisions of the MSA, the Robinson Family Entities and their respective businesses were to be sold or liquidated.[1] The parties agreed that a "friendly suit" would be filed in which they would ask the trial court to appoint Geneva Legg as receiver and to grant Legg the authority to appoint Douglas C. Bunnell as the CEO and president to manage the Robinson Family Entities pending the contemplated sale.

In accordance with the MSA, on May 25, 2012, the parties filed an agreed application for the appointment of a receiver. On that same date, the trial court entered an agreed order in which it appointed Legg to act as receiver with the immediate authority to retain, and she did retain, Bunnell to serve as interim CEO.

Later, because Bunnell felt that it would be conducive to a better sales price for the entities, he asked Mike Robinson (Robinson) to execute a noncompetition agreement. Robinson declined to do so except under certain conditions. Legg and Bunnell found those conditions to be unacceptable, and on July 2, 2012, on behalf of the Robinson Family Entities, they filed an "Application For Injunctive Relief or Motion to Enforce" with respect to the "(i) Crownover Interests . . . , (ii) Mike Robinson Interest . . . , and (iii) Myra Robinson." They referred to these parties as the "Subject Parties" in their Application.

In her brief, Legg states that the relief sought in the suit was "to enforce the provisions of the prior Agreed Order which empowered the Receiver to make all

---

[1]In the MSA, the parties state that they collectively own "Robinson Drilling of Texas, Ltd. and related entities, all of which are accounted for on a consolidated or combined basis." Although the MSA refers to the sale of "RDOT," the majority of the other documentation, including the order ultimately made the subject of this appeal, refers to the Robinson Family Entities. Therefore, in the interest of consistency, we will use the term "Robinson Family Entities" throughout this opinion.

2

reasonably prudent business decisions regarding the sale of the Robinson Family Entities." Nonetheless, we have carefully read the "Application for Injunction Relief or Motion to Enforce" and find the following to exemplify the consistent thrust of the application:

- In paragraph four of the application, Legg and Bunnell, on behalf of the Robinson Family Entities, requested that:

  [T]he Subject Parties be temporarily and permanently enjoined as follows (the "Three Injunctions"): a) Disseminating and/or using for any purpose any confidential information related to the Robinson Family Entities; b) Forming any competitive entity using a name identical or substantially similar to that of Robinson Drilling of Texas, Ltd.; and c) Competing with any of the Robinson Family Entities now and during the negotiation of any sale of the Robinson Family Entities as contemplated by the MS Agreement and Agreed Order (the "RFE Sale") and for five (5) years after consummation of the RFE Sale.

- Alternatively, Legg and Bunnell sought an order that would require the "Subject Parties" "to sign a document containing all of the 'Three Injunctions' to enforce the terms of the MS Agreement and/or Agreed Order." As we shall later see, the trial court did not order the parties to sign any such document.

- Legg and Bunnell claimed that they were entitled to that relief because the "Subject Parties" had entered an "Agreed Order" in which Legg was "empowered to make all reasonably prudent business decisions regarding the sale of the Robinson Family Entities and the management and operation of the Robinson Family Entities pending the RFE Sale." They claim that the "Three Injunctions are easily categorized as reasonably prudent business decisions to be taken with respect to the RFE Sale."

- In the remainder of the application, Legg and Bunnell set forth, with citation to authority, the reasons why they are entitled to injunctive relief.

3

- In paragraph seven of the application, they allege that Section 65.011 of the Texas Civil Practice and Remedies Code "authorizes injunctive relief when the applicant is entitled to the relief demanded, and all or part of the relief requires the restraint of some act prejudicial to the applicant." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.011(1) (West 2008). They further plead that Section 65.011 "also authorizes injunctive relief when irreparable injury to real or personal property is threatened, irrespective of any remedy at law." *See id.* § 65.011(5).

- Legg and Bunnell further outline, in paragraph eight of the application, the requirements one must meet in order to obtain injunctive relief. In paragraph nine, they point out that the terms of the "MS Agreement and/or Agreed Order" authorize them to seek this relief and, as alleged by them in paragraph ten of the application, without the relief, "the harm to the Robinson Family Entities is imminent, as at least one party to the MS Agreement and Agreed Order would likely compete with the Robinson Family Entities now and during the negotiation of the RFE Sale and/or within five (5) years after consummation of the RFE Sale." They state that, "without the relief requested herein, the harm that would occur is irreparable, as such actions would negatively affect the sale price which otherwise could be obtained with respect to the RFE Sale."

- In their prayer for relief, Legg and Bunnell respectfully prayed that the trial court "(i) temporarily and permanently enjoin the Subject Parties with respect to all of the Three Injunctions or (ii), in the alternative, order the Subject Parties to sign a document containing all of the Three Injunctions; and further relief, legal and/or equitable, as to which Movants may be justly entitled."

Robinson filed a response to the application, and a hearing was held on July 5, 2012, three days after the application was filed. Bunnell was the only witness who testified at the hearing. On August 7, 2012, the trial court entered an order in which it granted Legg and Bunnell's application. In its order, the trial court stated that it was enforcing the MSA and that, if it did not do so, "the harm to the Robinson Family Entities is imminent, and the harm that would occur is

4

irreparable." The trial court then proceeded to order that "the Subject Parties . . . will not compete during the negotiation of any sale of the Robinson Family Entities and for five (5) years following the consummation of any sale of the Robinson Family Entities." The trial court further ordered that "[t]he Subject Parties . . . shall not compete with any of the Robinson Family Entities during [that time] within a one hundred and fifty (150) mile radius of the courthouse in Big Spring, Texas."

Robinson filed an appeal from that order insisting that he is entitled to an interlocutory appeal because the trial court's order is, in effect, a temporary injunction. Robinson presents us with seven issues in this appeal. Basically, in Issues One, Two, Three, and Five, Robinson argues that the effect of the trial court's order is to temporarily enjoin him and others from certain activities regarding noncompetition and that the trial court entered the order in violation of Rules 683 and 684 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 683, 684. Legg and Bunnell counter that this court does not have jurisdiction in this appeal because there has been no final judgment entered and because the trial court's order does not constitute a temporary injunction that would allow for an interlocutory appeal.

We must first decide whether the order entered by the trial court is a temporary injunction or something else. Our jurisdiction is, as a general rule, limited to a review of final judgments. *Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992). It is fundamental error for an appellate court to assume jurisdiction over an interlocutory appeal when it is not expressly authorized by statute. *N.Y. Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 678–79 (Tex. 1990). However, we may consider an interlocutory order in which the trial court

grants a temporary injunction. *Id.* (citing CIV. PRAC. & REM. § 51.012 (West 2008), § 51.014(a)(4) (West Supp. 2013)).

When we consider whether an order is a temporary injunction, and therefore appealable, matters of form do not control over "the nature of the order itself—it is the character and function of an order that determine its classification." *Del Valle*, 845 S.W.2d at 809. A temporary injunction is an order that "operates until dissolved by an interlocutory order or until the final hearing." *Qwest Commc'ns, Corp. v. AT & T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000) (quoting *Brines v. McIlhaney*, 596 S.W.2d 519, 523 (Tex. 1980)). The purpose of an injunction is "to restrain motion and to enforce inaction." *Id.* Further, the purpose of a temporary injunction is to maintain the status quo of the subject until a trial on the merits can be had. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Matlock v. Data Processing Sec., Inc.*, 618 S.W.2d 327, 328 (Tex. 1981). The fact that the order contains a fixed term does not preclude the classification of the order as a temporary injunction. *Qwest*, 24 S.W.3d at 336.

In *Qwest*, AT & T asked the court to enter an order that restricted Qwest's conduct. *Id.* The trial court granted that request and commanded that Qwest undertake certain actions regarding monitoring and notice when it conducted certain construction operations. *Id.* The order was effective immediately upon its entry and provided that it was to last for three years or until it was extended or modified in writing and signed by the parties. *Id.* The supreme court wrote, "Thus, the order is an injunction." *Id.* Again, the fact that the injunction was for a term of three years did not prohibit the classification of the injunction as a temporary one. *Id.* at 336–37.

As in *Qwest*, the trial court here restrained motion and enforced action. *See id.* at 336. It prohibited competition during negotiation and for five years after any

sale of the Robinson Family Entities. The trial court's order here did not maintain the status quo, but determined the rights of the parties under the MSA and directed the conduct of the parties. *See In re Pierce*, No. 13-12-00125-CV, 2012 WL 3525638, at \*3 (Tex. App.—Corpus Christi Aug. 10, 2012, orig. proceeding) (mem. op.).

Because the trial court's order in the case before us places restrictions on the "Subject Parties," including Robinson, and is made effective immediately so that it operates during the pendency of the suit, it functions as a temporary injunction. *See Qwest*, 24 S.W.3d at 337. Because it is a temporary injunction, we have jurisdiction in this appeal. *See id.* at 338.

In *Qwest*, the order under review contained neither a setting for trial on the merits nor provisions for a bond. *Id.* at 337. The court noted that those requirements were mandatory as provided by Rules 683 and 684 of the Texas Rules of Civil Procedure and that, when a temporary injunction has been issued without compliance with those rules, the temporary injunction is void. *Id.*

The order in this case does not comply with Rules 683 and 684 in that, among other things, it does not provide for a bond and it does not include an order setting the cause for trial on the merits. The order in this case, like the one in *Qwest*, is therefore void. *See id.* Further, as pointed out by Robinson, the effect of the trial court's order is to accomplish the object of the application. A trial court commits error when it grants "a temporary injunction, the effect of which would be to accomplish the object of the suit. To do so would be to determine rights without a trial." *Tex. Foundries v. Int'l Moulders & Foundry Workers' Union*, 248 S.W.2d 460, 464 (Tex. 1952). A temporary injunction may not be used to obtain an advance ruling on the merits. *Fernandez v. Pimentel*, 360 S.W.3d 643, 647

7

(Tex. App.—El Paso 2012, no pet.). Issues One, Two, Three, and Five are sustained. We need not reach the other issues on appeal. *See* TEX. R. APP. P. 47.1.

The order of the trial court is reversed, and the injunction is dissolved. This cause is remanded to the trial court for further proceedings consistent with this opinion.


JIM R. WRIGHT

CHIEF JUSTICE


August 29, 2014

Panel consists of: Wright, C.J.,
Bailey, J., and McCall.[2]

Willson, J., not participating.

---

[2]Terry McCall, Retired Justice, Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.