### AMERICAN DISTILLING CO. v. WISCONSIN LIQUOR CO.

No. 6698.

Circuit Court of Appeals, Seventh Circuit.
April 15, 1939.

Rehearing Denied June 6, 1939.

584

George I. Haight and John Wm. Chapman, both of Chicago, Ill., and John A. Kluwin and Gerald P. Hayes, both of Milwaukee, Wis., for appellant.

William B. Rubin and Matthew R. Derzon, both of Milwaukee, Wis., for appellee.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

Plaintiff prosecutes this appeal from a judgment for the defendant which was entered upon a verdict directed by the District Court at the close of all the evidence. The plaintiff, a Maryland Corporation, is engaged in the business of producing and selling liquor products, and the defendant, a Wisconsin Corporation, is a wholesaler of liquor products. Plaintiff sold liquor products to the defendant between October, 1935, and August 15, 1936, and the suit below was an action at law for goods sold and delivered. The ground for the directed verdict was the court's holding that plaintiff had violated Section 5 of the Federal Alcohol Administration Act[1] and that such violation rendered the contract of sale and purchase illegal and unenforcible.

The Alcohol Administration Act sets up an administrative commission and pro-vides a system of regulation for interstate and foreign commerce in alcoholic beverages. Section 205, 27 U.S.C.A. which is directly involved in this case, is in effect a code for regulation of trade practices and declares certain conduct to be unlawful. Subsection (c) of Section 205, 27 U. S.C.A. seeks to eliminate from interstate and foreign commerce the use of certain unfair trade practices which have for their purpose interference with competition in such commerce.

Section 205(c), 27 U.S.C.A. makes it unlawful for any person engaged in business as a distiller, brewer, etc., either (1) by commercial bribery, or (2) by offering or giving a bonus, premium, or compensation to any officer, or employee, or representative of the trade buyer,

(a) to induce the trade buyer to purchase from the seller to the exclusion in whole or in part of the products of another seller in commerce; or

(b) to employ such means to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in such products; or

(c) to use such means of inducement if the direct effect is to prevent, deter, hinder, or restrict another person from selling or offering for sale any such products to such trade buyer.

The evidentiary facts relied upon for the finding that plaintiff violated Section 205 are as follows:

1. Plaintiff gave the defendant one case of goods for each ten cases purchased by defendant.

2. A salesman for plaintiff gave one salesman of defendant a traveling bag, and to another salesman of defendant a shirt, a $5 bill, and, on another occasion, a $5 or $10 bill. The reason for such gifts was to induce defendant's salesmen to make a strong effort to sell goods which plaintiff had delivered to defendant under the contract of sale. The salesmen of defendant in their line of duty sold on behalf of defendant the goods which defendant purchased from plaintiff and other distillers.

3. The manager of the Chicago division of plaintiff company paid $1.35 for a parlor car seat for the Vice President of defendant company on a train trip from Chicago to Milwaukee.

In support of its contention that the trial court erred in directing a verdict for

defendant the plaintiff urges, first, that its conduct and that of its salesmen did not constitute a violation of the Federal Alcohol Administration Act, 27 U.S.C.A. § 201 et seq., and second, that such conduct, even if in violation of the Act, would not vitiate the contract of purchase and sale.

■■ Section 205(c), 27 U.S.C.A. denounces two practices, (1) commercial bribery, and (2) the offering or giving of any bonus, premium or compensation to any officer, or employee, or representative of the trade buyer. The act does not define "commercial bribery" and its intended meaning must be sought in its normal meaning and usage. The most instructive usage is found in the work of the Federal Trade Commission. The Commission has applied the term "commercial bribery" to the practice of sellers of secretly paying money or making gifts to employees or agents to induce them to promote purchases by their own employers from the sellers offering the secret inducements. The vice of conduct labeled "commercial bribery," as related to unfair trade practices, is the advantage which one competitor secures over his fellow competitors by his secret and corrupt dealing with employees or agents of prospective purchasers.[2]

In view of the general acceptance of the Federal Trade Commission's definition of "commercial bribery," and because of the further fact that such definition expresses its normal meaning, we conclude that Congress intended the term to have that meaning in 5(c) of the Alcohol Administration Act, 27 U.S.C.A. § 205(c). But we do not think that the conduct of plaintiff comes within the foregoing definition. The gift of the case of goods was made directly to the employer and is in substance a trade discount. None of the gifts was made secretly to an officer or employee or representative of the trade buyer for the purpose of inducing the donee to promote directly purchases by his employer, which is the characteristic vice of commercial bribery.

■■ While we hold that no act of the plaintiff constitutes "commercial bribery" we cannot say that the giving of the various gifts was not a giving of a "bonus, premium, or compensation." Plaintiff characterizes the giving of the gifts as acts of everyday courtesies and says they are not the "dishonest payments which the framers of the Act intended to prohibit." The magnitude of a gift is not material in determining whether it is a "bonus, premium or compensation" and it is not necessary that the offering or giving be tainted by corruption or dishonesty. As stated above we assume that Congress intended to attribute to "commercial bribery" the meaning which had been given it in connection with unfair trade practices and which included the secret corrupting of employees and agents of buyers. But when Congress adds to the practice of "commercial bribery" the "offering or giving any bonus, premium, or compensation" we see no justification for our imposing qualifying adjectives, and especially so since the qualification suggested is covered in "commercial bribery." The offering or giving of a bonus, premium or compensation is broader than commercial bribery and need not be for the purpose of directly influencing a buyer to purchase from the seller. It would include a case in which a seller influences an officer or employee of a buyer to push sales of the seller's goods to the exclusion of goods of competitors and thereby indirectly induces the buyer to buy from the seller. It is significant that the section makes it unlawful for a seller "directly or indirectly" by commercial bribery or by offering or giving of any bonus, premium or compensation to induce any buyer to buy to the exclusion of the goods of competitors, etc.

■■ But assuming that there was an offering or giving of a bonus, premium or compensation within the meaning of Section 205(c), such conduct was not unlawful unless the trade buyer was induced to buy plaintiff's goods to the exclusion in commerce of goods of other sellers or unless the practice was continued to such extent that substantial interference with commerce in trade products resulted, or unless "the direct effect of such inducement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such trade buyer in interstate or foreign commerce."

Plaintiff insists that the evidence does not establish even one of the foregoing essential facts, but we shall not attempt to determine that factual question since we are of the opinion that a violation of Section 205 by plaintiff is not a defense to

---

[2] See Henderson, "The Federal Trade Commission", p. 18, 217, et seq.

plaintiff's claim for the price of the goods sold to defendant.

The right to sell goods in interstate commerce is not conditioned upon the vendor's not engaging in any of the acts condemned in Section 205(c), and no provision of the Federal Alcohol Administration Act purports to make contracts for sale and purchase of goods unlawful or illegal in case the vendor engages in any of the practices which are declared to be unlawful in Section 205. Other sections carry necessary implications of invalidity of contracts for sales made without compliance with the section. Section 203, 27 U.S.C.A. is entitled "Unlawful businesses without permit"; and provides that "it shall be unlawful, except pursuant to a basic permit issued * * * to engage in the business" etc., and for "any person to sell * * *."

Section 206, 27 U.S.C.A., relates to bulk sales and provides that "It shall be unlawful for any person * * * to sell or offer to sell, contract to sell, or otherwise dispose * * *" without conforming to the provisions of the section. In contrast to the foregoing provisions the language of Section 205 declares certain acts to be unlawful but there is no declaration that such acts affect the lawfulness of selling or contracting to sell. Commercial bribery, or the offering or giving of a bonus, etc., under the conditions named, is declared unlawful; but it is only the conduct which is declared unlawful. The suggestive difference in expression is made obvious by rewording 205(c) to read: "Any sale of, or contract to sell distilled spirits which is influenced by commercial bribery shall be unlawful." The distinction is that in Sections 203 and 206 the selling or the contracting to sell is declared unlawful and in Section 205 only certain means of competing for sales are declared unlawful.

The Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, renders certain conduct affecting interstate commerce illegal. The Supreme Court has had before it the question of whether the fact that the vendor was engaged in acts of illegal restraint of trade at the time of a sale would be a defense in an action for the sale price.

In Connolly v. Union Sewer Pipe Company[3] the plaintiff brought an action for the price of goods sold, and the defense was made that both under common law and the Anti-Trust Act the plaintiff was an illegal combination and that the sale was made while plaintiff was acting under such illegal combination. This was held to be no defense, even though the Anti-Trust Act, 15 U.S.C.A. § 15, "gives the right to any person 'injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful' by the act; to sue and recover treble the damages sustained by him." The opinion states that the act does not declare illegal or void the sales of such combination, and that an entirely different question would be presented if the act authorized a purchaser to plead the fact of the illegal character of the combination in defense of a suit for the price of goods purchased.

In Continental Wall Paper Company v. Voight et al.[4] which was a suit for the recovery of the price of goods sold and delivered, the defense was made that plaintiff was an illegal combination under the Anti-Trust Act, and that the sale to defendant was part of an arrangement whereby defendant itself joined in the illegal combination; that defendant had agreed to buy from no one but plaintiff; that defendant had agreed to buy at prices fixed by plaintiff; that defendant had agreed to fixed terms of resale by it; that the plaintiff had entered into such agreement with other wholesalers and jobbers for the purpose of compelling jobbers and wholesalers to buy solely from plaintiff, all in order to control the price to wholesalers and jobbers and the price at which the latter sold; and that the price sought to be recovered was unreasonable and above the fair market price. The court sustained the defense, saying that defendant was a party to the illegal combination and that plaintiff was seeking to give effect to agreements which constituted the combination. It thus appears that the court held that defendant's participation was a violation of the act prohibiting combinations; that defendant had committed, with plaintiff, the illegal act and that the sale to defendant on the terms fixed by the illegal acts was illegal because it was itself an act of combination. Four justices joined in a dissenting opinion written by Justice Holmes. The dissent was on the grounds that it was not shown that defendant was a party to the illegal com-

[3] 184 U.S. 540, 22 S.Ct. 431, 436, 46 L.Ed. 679.

[4] 212 U.S. 227, 29 S.Ct. 280, 297, 53 L.Ed. 486.

bination, and that the contract of sale was not a part of the illegal act of combining. The minority believed that Connolly v. Union Sewer Pipe Company, supra, controlled. Justice Brewer, concurring with Justice Holmes, gave as an additional reason for dissenting that "where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes."

In a later case, Wilder Mfg. Co. v. Corn Products Co.,[5] the defense in an action for goods sold and delivered was that plaintiff was a combination of all manufacturers of glucose or corn syrup in the United States in violation of the Anti-Trust Act; that plaintiff unreasonably had advanced the price of its products; that to prevent competitors from going into the business of producing glucose, plaintiffs devised a plan to return a percentage of total purchases to its customers each year provided they bought from no one but plaintiff; and, further, that all contracts of sale of plaintiff provided that the goods were not to be re-sold but were to be consumed by the purchaser. This was held to state no defense. The court stated that the right of individuals to enforce the act was excluded; and gave as one reason what Justice Brewer had stated in the opinion in the preceding case, as a dissenter, that "where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes." The court also stated that the case reduces itself to the question whether the contract of sale was inherently illegal so as to bring it within the rule that courts will not exercise their powers to enforce illegal contracts or to compel wrongdoing. The court also stated that the proposition of defendant was that the stipulations as to return of a percentage of profits were intrinsically legal, but became illegal because they were used by an illegal combination as a means of sustaining its wrongdoing; and that the decision in the previous case (Continental Wall Paper Co. v. Voight, supra) forced such result. The Supreme Court held against this and distinguished the Continental Wall Paper case as follows:

" * * * the ruling in that case was based not upon any supposed right to import into a legal and valid contract elements of wrong which there was no right to consider, but was rested exclusively upon elements of illegality inhering in the particular contract of sale in that case, which elements of illegality may be thus summarized: (a) the relations of the contracting parties to the goods sold, (b) the want of real ownership in the seller, (c) the peculiar obligations which were imposed upon the buyer, and (d) the fact that to allow the nominal seller to enforce the payment of the price would have been, in and of itself, directly to sanction and give effect to a violation of the anti-trust act inhering in the sale."

In A. B. Small Company v. Lamborn & Company[6] the defense to an action brought on contract for sale and purchase of goods was that plaintiff was a member of an illegal combination which had been entered into in order to increase prices; that the contract was made during the life of the combination and that the terms of the contract of sale conformed to the standards sanctioned by the combination. This was held not to constitute a defense, the court stating that "it is only where the invalidity is inherent in the contract that the act may be interposed as a defense," and that "with that exception the remedies which the act provides for violations of it are exclusive."

It thus appears that the principle which covers the four cases above may be stated as follows: If the sale is an integral part of the act of combining then the illegal combination denounced by the Act includes the sale; but an illegal method of competition by combination used to obtain sales does not render the sales illegal, for the reason that the sale, though resulting from an illegal competition, is not itself competition but the result thereof. In one case the sale itself becomes a part of the prohibited act because it is an integral part of the illegal combination; in the other, the sale, while it may be the result of the illegal competition, is not a means or method of carrying on the illegal competition.

It is the foregoing factual distinction which the United States Supreme Court relies upon in Wilder Mfg. Co. v. Corn Products Co., supra, to distinguish Continental Wall Paper Company v. Voight, supra. In the Wilder case the court emphasizes

---

5 236 U.S. 165, 35 S.Ct. 398, 401, 59 L.Ed. 520, Ann.Cas.1916A, 118.

6 267 U.S. 248, 45 S.Ct. 300, 302, 69 L.Ed. 597.

especially "the peculiar obligations which were imposed upon the buyer * * *". By the terms of the contract of sale in the Continental Wall Paper Co. case, supra, the vendee, as a part of his contract of purchase from the vendor, agreed to resell upon terms fixed by his vendor, agreed to buy from no one but the vendor, and agreed to buy at prices to be fixed by the vendor. The result was that the vendee became a party to the illegal combination and participated in it through the contract of sale and purchase of the very goods for the purchase price of which the vendor was seeking recovery.

In the instant case the sale and purchase of the goods was in no sense an integral part of any act prohibited by the Alcohol Administration Act. The conduct which Section 205, 27 U.S.C.A. denounces is unfair competition by "offering or giving any bonus, premium, or compensation to any officer, or employee, or representative of the trade buyer"; and granting that the sales in question were induced, in part, by such illegal method of competition, the sales were not an integral part of the illegal competition, as was the case in Continental Wall Paper Co. v. Voight, supra, and, consequently, were not illegal by reason of being an integral part of the conduct denounced by the statute. If the acts of plaintiff-vendor constitute a violation of Section 205(c), the statutory remedy and punishment are exclusive; and as stated by the Supreme Court in A. B. Small Company v. Lamborn & Co., supra, "it is only where the invalidity is inherent in the contract that the act may be interposed as a defense," and "with that exception the remedies which the act provides for violations of it are exclusive."

There is no general rule that statutory declaration that certain acts are illegal makes illegal all conduct which is the result of or connected with the illegal acts. The Supreme Court has held in numerous cases that when a statute prescribes a rate of interest and forbids the taking of more, and more is contracted for, the contract is enforceable for the payment of the principal amount and for the amount of interest which might be taken lawfully and void only as to the excess. It was so

held in McBroom v. Scottish Mortgage & Land Investment Co.,[7] even though in that case the taking of usurious interest was made a misdemeanor.

Defendant calls attention to Miller v. Ammon.[8] This case is an excellent illustration of a class of cases in which contracts are held unenforceable, but we think it is distinguishable from the instant case. In the Miller case the plaintiff sought to recover the price of liquor which had been sold to the defendant. Plaintiff was one of a class subject to an act which provided that "no person * * * shall sell or offer for sale any spirituous * * * liquors * * * without having first obtained a license therefor * * * under a penalty of not less than $50 or more than $200 * * *." The liquor involved in the suit was sold by the plaintiff at a time when he had not obtained the prescribed license. It was held that the plaintiff could not recover. The following comment of the Court discloses the basis of the denial of recovery: "* * * a contract made in violation of a statute is void, and * * * when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. * * * By the ordinance, a sale without a license is prohibited under penalty.".

If in the instant case the contract of sale in question had been made by the plaintiff at a time when it had not obtained a basic permit in compliance with Section 203, the foregoing decision would be authority for a defense based upon illegality.

Defendant urges that it is material to the decision in the instant case that the liquor trade is subject to stringent regulations, and even prohibition. But our inquiry is not what Congress may do, but what it has done in the Federal Alcohol Administration Act. We do not question that Congress could render illegal all liquor sales made in commerce with the aid of unfair competition and that the expression of such intent would prevent recovery of the price of such sale. There is no such expression in Section 205. We have called attention above to the fact that the language of Section 205 is quite different from other sections of the Act.

[7] 153 U.S. 318, 14 S.Ct. 852, 38 L.Ed. 729. See, also, Hansbrough v. Peck, 5 Wall. 497, 18 L.Ed. 520; Oates v. National Bank, 100 U.S. 239, 25 L.Ed. 580; Bernhisel v. Firman, 22 Wall. 170, 22 L. Ed. 766.

[8] 145 U.S. 421, 12 S.Ct. 884, 885, 36 L.Ed. 759.

Defendant's argument might have more force if addressed to the same contention in a case arising under sections 203 or 206.

Defendant urges two procedural points:

1. No error can be assigned on the action of the court in directing a verdict for the reason that the bill of exceptions contains no exception to such action.

2. There was no motion for a new trial and therefore, defendant contends, this appeal will not lie.

The bill of exceptions discloses enough to satisfy the procedural requirement respecting an exception. It appears in the bill of exceptions that the following took place after the sustaining of defendant's motion for a directed verdict:

"Mr. Kluwin: No exceptions were taken to the order directing the verdict. May we have that exception.

"The Court: All right, file your written exception."

The foregoing is a sufficient taking of an exception to the order directing the verdict. Thereafter plaintiff did file a formal written exception which appears in the record but not in the bill of exceptions. The record supports plaintiff's statement that the exception was taken before the jury retired.

The purpose of an exception is to warn and notify the court and opposing counsel that a ruling is considered erroneous and, if not corrected, will be the basis of an appellate review.[9] The recitals in the bill of exceptions are sufficient to present to this Court the alleged error of the trial court in directing a verdict for the defendant.

As to defendant's second procedural point it is sufficient to say that a motion for a new trial is not a condition precedent to the taking of an appeal under federal procedure in Federal Courts.

Plaintiff asks that the case be remanded with instructions to render judgment for plaintiff in the amount of $20,-593.45 with costs. Since the trial court sustained the motion of the defendant for a directed verdict on the ground that the contract for the sale and purchase of goods was illegal, there was no reason for a finding as to amount of recovery. The defendant in its answer alleged a set-off on the ground that plaintiff had breached its alleged agreement to sell only to defendant in Wisconsin for one year, both by selling to others in April, 1936, and by terminating the alleged contract prior to the end of the year. Assuming that there is no ground for a dispute about the amount due the plaintiff, if only the price of the goods sold is taken into consideration, there remains a factual dispute in regard to the merits of the set-off which was not submitted to the jury. We do not think that the evidence in support of defendant's claim to a set-off is so unsubstantial as to justify our saying as a matter of law that such claim is without merit. That question should first be passed upon by the District Court.

We hold that the trial court erred in sustaining defendant's motion for a directed verdict and the judgment of the District Court is reversed.

---

9 Marker, "Federal Appellate Jurisdiction and Procedure," p. 62; 4 Corpus Juris Secundum, p. 658.