**MANTEK DIVISION OF NCH CORPORATION, Plaintiff-Appellee,**

v.

**SHARE CORPORATION, David J. Denton, Dennis Lenahan, Kenneth C. Roten, and Malcolm Maurice Slayden, Defendants-Appellants.**

No. 85–1758.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1985.

Decided Jan. 7, 1986.

Bruce C. O'Neill, Fox, Carpenter, O'Neill & Shannon, Milwaukee, Wis., for defendants-appellants.

Michael Rosiello, Barnes & Thornburg, Indianapolis, Ind., for plaintiff-appellee.

Before WOOD, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and GORDON, Senior District Judge.*

* The Honorable Myron L. Gordon, Senior District Judge of the Eastern District of Wisconsin, is sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

Mantek, a division of NCH Corporation ("Mantek"), brought this action in the district court to obtain a preliminary injunction against Share Corporation ("Share") and four of Share's employees who had formerly worked for Mantek. Mantek and Share are competitors in the chemical sales industry, and the four former Mantek employees sell products for Share in their former Mantek sales territories. Mantek claims that these employees are violating covenants not to compete contained in their former employment contracts with Mantek.

The district court held an evidentiary hearing on whether to grant the requested preliminary injunction. At the hearing, the court refused to allow Share to present any evidence supporting its defense that the Mantek covenants not to compete were part of a pervasive scheme of commercial bribery. The district court then granted Mantek's request for a preliminary injunction prohibiting the salesmen from selling Share products in their former Mantek territories.[1]

Because we hold that the district court erred in refusing to consider evidence supporting Share's commercial-bribery defense, we vacate the preliminary injunction and remand the case for a new evidentiary hearing on Mantek's request. Furthermore, should the trial court again grant the injunction, the scope of the preliminary injunction must be limited to customers and potential customers with whom the Share salesmen had contact while working for Mantek.

## I.

Mantek, the plaintiff, is a Delaware corporation with its principal place of business in Texas. Mantek is engaged in the business of selling and distributing a wide variety of chemical products. Share, the corporate defendant, is a Wisconsin corporation with its principal place of business in Wisconsin. Share, like Mantek, is engaged in the selling and distribution of chemical products. The four individual defendants, David Denton, Dennis Lenahan, Kenneth Roten, and Malcolm Slayden, formerly worked for Mantek and now sell Share products or supervise Share salesmen in the same territories in which they formerly worked for Mantek.

The chemical-products market is a highly competitive one, and Mantek and Share compete directly in several states, including Illinois, Indiana, and Kentucky. Because of the diversity of chemical products available, virtually every type of business or municipal entity is a potential customer for Mantek and Share. To protect the goodwill built up by its salesmen, Mantek has each salesman it hires sign a contract containing a covenant not to compete with Mantek for a limited period after the salesman's association with Mantek ends. Mantek's contracts with Denton, Roten, and Slayden prohibited them from selling competing products in their former Mantek territories for eighteen months after they left Mantek. Lenahan's contract only prohibited selling to customers or potential customers he had contacted on behalf of Mantek. Because of the vast number of potential customers for chemical products in any given territory, each individual defendant had contacted only a fraction of the potential customers in his Mantek territory before transferring his allegiance to Share. The defendants do not dispute that they sold Share products both to former Mantek customers and to previously uncontacted customers within their former Mantek territories.

Share admits that it knew of its new employees' covenants not to compete with Mantek. Share nevertheless actively recruited the four individual defendants and placed three of them as salesmen in their former Mantek territories. Slayden, the fourth, supervised Share salesmen in his former Mantek territory. Furthermore, Share promised to pay the defendants' le-

---

1. The preliminary injunction as to one defendant, Dennis Lenahan, was on a prior-customer basis, because that was the wording of the covenant in his contract.

gal fees if Mantek sued to enforce the covenants. Share did this because it viewed the covenants as unenforceable. First, Share believed that the covenants were part of a pervasive plan of commercial bribery in which Mantek engaged. Second, Share believed that the territory-wide restriction was unreasonable and thus unenforceable as against public policy.

Mantek sought a preliminary injunction to enforce the covenants and to prevent Share from inducing other Mantek salesmen to breach their contracts. The district court applied Texas law, according to the choice of law provisions in the defendants' contracts. The court held two days of evidentiary hearings and then granted the preliminary injunction, enforcing the covenants on a territory-wide basis. At the hearing, the court refused to allow Share[2] to present any evidence supporting its defense that the covenants were part of a Mantek commercial-bribery scheme. Share appeals both the trial court's refusal to consider evidence of the alleged commercial-bribery scheme and the territory-wide scope of the trial court's preliminary injunction.

## II.

At the evidentiary hearing, the trial court stated that "[t]he court sees this as a simple contractual situation, and is going to approach it in that fashion...." Transcript of April 18, 1985 Preliminary Injunc-tion Hearing, at 5. After ruling that Share could not raise its commercial-bribery defense, the court allowed Share to make a narrative offer of proof for purpose of the record. After the offer of proof, the court explained that the reason it had sustained Mantek's objection was its hesitancy to try commercial sales practices. *Id.* at 23–25. A review of the record shows that the trial court's only decision was to exclude completely the evidence—the court made no determination as to the merits of Share's defense or the sufficiency of Share's offer of proof.[3] The trial court then found that Mantek had established its prima facie case, and granted the injunction.

■ We set out the sequence of events above because it is necessary to place the issue we face in the proper perspective. We express no opinion as to whether Share's offer of proof would have been sufficient to necessitate a full evidentiary hearing on the commercial-bribery defense had the trial judge heard Share's offer of proof prior to his decision to exclude all evidence of Share's defense. We decide merely that Share's offer of proof, in this after-the-fact context, demonstrates that Share had a defense which, if Share could establish it, would necessarily influence the trial court's decision on the preliminary injunction. We hold that where a defendant in a preliminary injunction hearing raises a colorable defense,[4] which if established

---

**2.** For convenience sake, we use "Share" to refer to all the defendants (*i.e.,* the corporation and the four individuals) unless otherwise noted.

**3.** Several of the trial judge's comments after Share's offer of proof make it clear that the judge did not consider the content of Share's offer. At one point the judge said he could not rule on "what I would call generally, sales practices in the industry." Transcript of April 18, 1985 Preliminary Injunction Hearing, at 23. Mantek likewise attempts to characterize Share's defense as an attack on general practices in the industry. This was not Share's position. Share clearly offered to prove that Mantek's practice of giving "gifts" far eclipsed the general (and acceptable) industry practices. The judge also commented that even though he might find the sales practices offensive, as "an inhabitant of the real world I think I can take judicial notice that the Fuller Brush Company has had door to door salesmen since the beginning of time and they have always had door openers in the form of some little gift or other." *Id.* at 23–24. The Fuller Brush salesman situation is not analogous to Share's defense. The essence of commercial bribery is that the seller is secretly giving a bribe to the customer's agent to induce the agent to betray his principal (the customer) by purchasing the seller's product even though it is not in the customer's best interest. Thus, a salesman such as the Fuller Brush salesman who deals directly with the customer cannot commit commercial bribery, no matter how hard he might try.

**4.** We use "colorable defense" to mean that the defendant alleges that he can prove the facts necessary to establish a prima facie case for a defense which, on the facts of the case, would be a defense to the plaintiff's action.

would necessarily influence the court's decision, the court must exercise its discretion to hear enough evidence of the defense for the court to determine the weight, if any, the defense deserves in the court's decision. Once the court allows the defendant to present some evidence of its defense, whether the court in its discretion merely takes an offer of proof or grants a full evidentiary hearing, we will only review the court's decision for an abuse of discretion.

Share's offer of proof,[5] in a nutshell, was as follows. Mantek had a well-developed practice of giving "gifts" to purchasing agents to bribe the agents to purchase from Mantek. This alleged bribery was essential for Mantek because Mantek's products sold for higher prices than its competitors' products. After a new Mantek salesman began working a territory, Mantek's managers would instruct the salesman that the only way to sell Mantek's overpriced goods in the competitive chemical-products market was to use increasingly larger "gifts." Mantek kept records to ensure that each salesman spent an adequate percentage (typically at least two-percent) of his commission on the "gifts." Mantek salesmen were told that the bigger the "gifts" given, the bigger the orders they could expect.

Two of the individual defendants would have testified that Mantek's practice of alleged commercial bribery directly affected them. Both Mr. Lenahan and Mr. Slayden would have testified that they quit their jobs at Mantek rather than continuing their involvement with Mantek's policy.

To obtain a preliminary injunction, a plaintiff must show (1) no adequate remedy at law (or irreparable harm if the injunction is denied), (2) the harm to the plaintiff outweighs the harm to the defendant if the injunction is granted, (3) a reasonable likelihood of success on the merits, and (4) the injunction will not harm the public interest.

*ON/TV of Chicago v. Julien*, 763 F.2d 839, 842 (7th Cir.1985). In this case, the defendants do not contend that, based upon the evidence allowed at the evidentiary hearing, the trial court erred in enjoining them from transgressing the covenants not to compete. The defendants contend, rather, that the trial court erred in excluding all testimony concerning the alleged illegal activity of Mantek, and its effect on the defendant-salesmen.

■ We will review a trial court's decision to grant a preliminary injunction only for an abuse of discretion. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975). In this case, we do not need to engage in as extensive a review of the offer of proof as would be the case had the trial court ruled that the offer of proof itself were insufficient to establish commercial bribery. We look only to see whether Share's offer of proof was sufficient to indicate that Share had a colorable commercial-bribery defense, which if established would necessarily influence the court's decision as to Mantek's "clean hands" and thus Mantek's reasonable likelihood of success on the merits. If so, the trial court abused its discretion by not allowing Share to present any evidence of its defense.

First, we find that Share made out a colorable commercial-bribery claim. Based upon Share's offer of proof summarized above and reasonable inferences which can be drawn from it, Share indicated that it would be able to make out a prima facie case of commercial bribery. Mantek attacked the sufficiency of Share's showing both in its brief and at oral argument, but although we need not and therefore do not decide whether Share's offer would have been sufficient to influence the trial judge had he considered it, we find that Share's offer demonstrates the minimal sufficiency necessary to establish a colorable defense.

---

**5.** We hold that the trial court erred by failing to allow Share to present any evidence of its defense. The content of Share's offer of proof is wholly irrelevant to that holding. We discuss the offer of proof, to the limited extent that we do, only to determine whether the error affected the trial court's decision to grant the injunction. In other words, Share's offer of proof is relevant only to the issue of whether the trial court's error necessitates a remedy.

This circuit has long followed the generally accepted Federal Trade Commission view of commercial bribery as "the practice of sellers of secretly paying money or making gifts to employees or agents to induce them to promote purchases by their own employers from the sellers offering the secret inducements." *See American Distilling Co. v. Wisconsin Liquor Co.,* 104 F.2d 582, 585 (7th Cir.1939). We find that Share offered to prove that Mantek was engaged in just such a practice.[6] This alleged conduct of Mantek is to be distinguished from the common business practice of openly giving, for example, nominal Christmas gifts, or advertising items or so forth.

Mantek argues that even if Share could establish its commercial-bribery claim, the claim would not be a defense to this action. The attorney for Share conceded at oral argument that not every allegation of misconduct by Mantek would be sufficient to invoke the equitable "clean-hands" doctrine. In this case, however, we agree with Share that its commercial-bribery defense has a sufficient nexus to Mantek's claim to bring into play the clean-hands doctrine.[7]

The clean-hands doctrine is "the equitable maxim that 'he who comes into equity must come with clean hands' ... relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). If Share can substantiate its allegation that Mantek is engaged in commercial bribery and demonstrate a sufficient nexus to Mantek's motion, the doctrine of unclean hands would necessarily affect the trial court's resolution of Mantek's motion. *See, e.g., Great Western Cities, Inc. v. Binstein,* 476 F.Supp. 827, 833 (N.D.Ill.), *aff'd mem.,* 614 F.2d 775 (7th Cir.1979).

The issue of whether Share alleged a sufficient nexus turns upon "whether [Mantek's] improper conduct 'sufficiently affected the equitable relations between the parties' to justify the court refusal to grant relief ... [i.e.] whether, under the circumstances, the continued existence of that relationship made it necessary for the defendant to participate with plaintiff in the improper conduct." *See Northern Pacific Lumber Co. v. Oliver,* 286 Or. 639, 596 P.2d 931, 942–43 (1979). We find that Share's brief offer of proof indicates defendants Lenahan and Slayden would have testified that they quit their Mantek jobs rather than continue their involvement in the alleged bribery.[8] Although Share's of-

---

6. Mantek argues that Share's offer of proof is insufficient, primarily in that it does not demonstrate the necessary element of "secrecy." We do not agree. Share alleged "the prices of NCH [Mantek] are so high, compared to the rest of the market, the only way they can sell their products is through the giving of gifts to the purchasing agents." The inescapable inference is that neither the purchasing agent nor the salesman informs the customer that the purchasing agent is lining his pockets with bribes while the customer pays an excessively high price for Mantek's product. Much of Mantek's remaining argument essentially attempts to rebut the merits of Share's offer of proof, but the appropriate forum for that is the trial court.

7. By "nexus" we mean simply that this claim raised by the defendants is sufficiently connected to this action brought by the plaintiff to be a defense to the action. For example, assuming defendants could prove a claim that the plaintiff is engaged in extensive tax fraud, this claim would not be a defense to the plaintiff's action for a preliminary injunction, because tax fraud is not sufficiently connected to the plaintiff's attempt to enforce these particular restrictive covenants. Thus, there would be no nexus.

8. Defendant Slayden would have testified that he was told in February of 1984 that he must increase sales in his area in order to move up in a management position, and that to do so he must make greater use of "gifts." Mantek allegedly made it clear to him that he must commit himself to its business practice or resign. Slayden would have testified that he chose to resign both because he had become aware of the recent indictments of salesmen in the ongoing Indiana ChemScam investigation (probing the bribery of government officials by chemical company salesmen) and because he had been visited in the summer of 1983 by an FBI agent who inquired about the bribery practice of another employee of NCH Corporation.

Defendant Lenahan would have testified that in January of 1984 Mantek's Midwest Division manager informed him that he had to increase monthly production from $6,500 a month to

fer of proof did not reveal as direct a nexus to the other two defendants, we believe that Share's offer, taken as a whole, indicates that Mantek's scheme of alleged commercial bribery so permeates Mantek's sales practices that all of Mantek's salesmen were required to participate in the scheme. A restrictive covenant substantially limiting a salesman's opportunities to continue practicing his trade after leaving Mantek certainly gave Mantek leverage in its alleged attempts to coerce unwilling salesmen to adopt its practice of bribing purchasing agents. We find this bribery, assuming Share can prove its claim, to be so much a part of the sales contract that Mantek seeks to enforce that all of the defendants have a sufficient nexus to raise the commercial-bribery defense.[9]

We conclude that Share's offer of proof was sufficient to indicate that Share had a colorable defense of commercial bribery which, if Share could substantiate its claims, would necessarily affect the trial court's determination whether Mantek established its reasonable likelihood of success on the merits. We sympathize with the trial court's reluctance in this case to expand the scope of the hearing to include

evidence on a somewhat unusual defense. We do not intend to indicate, by this opinion, that a trial court must hold extended evidentiary hearings on every defense raised to a motion for a preliminary injunction.[10] We merely hold that where a defendant asserts a colorable defense, which if established would necessarily affect the decision of a court in equity whether to grant the preliminary injunction, the court must allow the defendant to present enough evidence for the court to assess the probable validity and impact of the defense. In this case, before Share made its offer of proof, the trial court ruled, in effect, that Share's defense of commercial bribery was irrelevant, no matter what Share's evidence might show. We therefore find it necessary to vacate the preliminary injunction and remand this case to the trial court for whatever type of evidentiary hearing the trial court deems appropriate to enable Share to present evidence of its commercial-bribery defense.

### III.

Share also challenges the district court's decision that the geographical scope of Mantek's covenants was reasonable.[11]

$10,000 a month. Lenahan would have testified that he was instructed that he could accomplish this by giving larger and more frequent "gifts." Lenahan resigned soon after.

9. Mantek also argues that Texas law requires the defendants to prove that Mantek's alleged unclean hands injured them. *See, e.g., Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 410 (1960); *Mitchell Brothers Film Group v. Cinema Adult Theater,* 604 F.2d 852, 863 (5th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980). Share's brief offer of proof is sufficient, however, to indicate that Share may be able to prove injury to the defendants themselves. For example, Share may be able to prove that Mantek forced the defendants to decide between continuing (or increasing) their involvement in an illegal practice and re-signing, in which case the restrictive covenants forbid the defendants from continuing to work in their same sales territories. The bottom line, however, is that whether Share has established an injury is a question for the trier-of-fact, not the appellate court.

10. On the problem of frivolous defenses, we note that even if the defense is frivolous, the trial court's evidentiary hearing often will not

be greatly expanded. In such a case, our decision allows the trial court to exercise its discretion to take an initial offer of proof and then determine whether more evidentiary hearings are necessary. If the offer of proof convinces the court that the defense is probably frivolous, the court can disregard it, or at least delay consideration of it until trial. We do not take away the trial court's discretion to consider the weight and sufficiency of a defense, we merely require that the court's exercise of discretion be informed.

11. We apply Texas law to the equitable issues in this case, as the district court did. At oral argument, the defendants asserted for the first time that under the *Erie* doctrine a federal court sitting in equity should apply federal law, citing *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1973). The defendants failed to provide the plaintiff, or the court, with the citations to this new authority prior to oral argument, as our circuit rules clearly require. Circuit Rule 11, Circuit Rules of the United States Court of Appeals for the Seventh Circuit. Nevertheless, we do not find any significant inconsistency between the Texas common law of equity and the federal common

Mantek's covenants forbid defendants Denton, Roten, and Slayden from competing with Mantek anywhere within their former Mantek territories. Share does not challenge the covenant in defendant Lenahan's contract, which only covered former customers whom Lenahan contacted while working for Mantek. Share asserts that even if the covenants are otherwise enforceable, the territory-wide restrictions are unreasonably broad.

As a preliminary matter, we note that, depending upon Judge Noland's decision on remand, a resolution of this issue may be unnecessary. If, however, Judge Noland reissues the preliminary injunction after hearing evidence of Share's defense, we will face the same issue anew. It is therefore in the best interests of judicial economy to discuss the appropriate scope of the possible injunction.

Assuming the trial court does decide to reissue the preliminary injunction, perhaps modified, the issue becomes whether a territory-wide restriction is reasonably necessary to protect the legitimate interests of Mantek. We thus examine the nature of the chemical-products industry, the extent of Mantek's protectible interest, and the necessity of a territory-wide restriction.

■ Whether a territorial restriction in a covenant not to compete is reasonable turns upon a close examination of the facts of the particular case. *See Matlock v. Data Processing Security, Inc.,* 618 S.W.2d 327, 329 (Tex.1981) (requiring balancing of respective interests of employer, employee, and public, plus consideration of relevant policies). Thus, the court must make an independent determination in each case that the territorial restriction is not greater than is reasonably necessary to protect the legitimate business interests of the employer. *See NCH Corporation v. Share Corporation,* 757 F.2d 1540, 1542–43 (5th Cir.1985) (applying Texas law).

We look first at the chemical-products market. This market, in any particular territory, extends to virtually every business or municipal entity. Larry Bernat, Mantek's vice-president of sales for the Midwest Division, acknowledged that "every business that had four walls and a door would be a potential chemical customer." [12] Defendant Roten estimated that within the city of Louisville, Kentucky there are approximately 20,000 potential chemical accounts and in his entire territory (a sixty-mile radius of Louisville) probably 50,000 to 70,000 potential accounts.

The territories involved in the covenants not to compete are extensive. For example, defendant Roten's territory included seven counties in Kentucky and six counties in Indiana. Defendant Denton's territory included five counties in Illinois and two counties in Indiana. Defendant Slayden was enjoined from working in three entire states. Given the nature of the chemical-products market and the size of the territories, it is clear that a territory-wide injunction prevents the defendants from contacting a significant number of new customers in their old territories (*i.e.,* customers with whom they had no contact while employed by Mantek).

Share does not dispute that Mantek has a protectible interest in the goodwill developed by salesmen who sold Mantek products to particular customers. It is often true that a customer will have a greater allegiance to the salesman with whom the customer has personal contact than to the impersonal corporation the salesman represents. It would be unfair for Share to appropriate that goodwill, developed at Mantek's expense, and use it to compete with Mantek.

The more difficult issue is whether Mantek has any protectible goodwill interest in the large number of potential customers in

---

law of equity as it might affect the outcome of this case.

**12.** Mr. Bernat testified that, "We sell to every type of customer there possibly could be in industry, such as hospitals, hotels, motels, schools, churches, municipalities, manufacturing facilities, automotive accounts, bottlers, dairies. Really any industrial account with four walls and a door."

each territory with whom the defendants had no contact while under Mantek's employ. If not, then the strong public policy against covenants not to compete makes this territory-wide injunction unreasonable. In resolving this issue, we are greatly aided by a recent Fifth Circuit opinion, *NCH Corporation v. Share Corporation,* 757 F.2d 1540 (5th Cir.1985), which in another action between NCH Corporation ("NCH") and Share considered a similar covenant, albeit in a different context.

In *NCH Corporation,* NCH sued Share for tortious interference with contractual relations, unfair competition, misappropriation and conversion of trade secrets, common-law conspiracy, and tortious interference with economic and business opportunities. NCH based its claims upon the covenants not to compete in the contracts of its former employees who had begun working for Share. The covenants involved in *NCH Corporation* are the same in all significant respects as the covenants at issue in this case. The *NCH Corporation* court, applying Texas law, decided that

> no effort was made to limit this prohibition only to customers with whom the sales representative had dealt during his employment with NCH. In this respect the covenants were clearly in excess of what was required to protect NCH's business and goodwill. Given the geographic magnitude of the areas covered, and the number of potential purchasers within any given territory, we are in agreement with the trial court that the covenants were unreasonable as a matter of law.

757 F.2d at 1543. *See also USAchem, Inc. v. Goldstein,* 512 F.2d 163, 168 (2d Cir. 1975) (reaching same result applying Texas law in action brought by corporate predecessor of NCH; territory-wide restrictive

covenant held overly broad and unenforceable).

We agree with the Fifth Circuit's conclusion. The only reasonable territorial restraint in this case is a prohibition against the defendants calling upon customers whom they contacted while working for Mantek. This would include both former customers and potential customers from whom they actually solicited business while with Mantek.[13] Mantek has not shown, and indeed it cannot show, any goodwill with the potential customers who are within the defendants' former territories yet have had no contact with the defendants.

Mantek argues that the Fifth Circuit in *NCH Corporation* "ignore[s] almost totally the relevant Texas authorities." Mantek cites a number of Texas appellate cases to support its assertion that a territorial covenant can be reasonable, if limited to the employee's actual former territory. *See, e.g., Grubaugh v. Texas Employers' Insurance Association,* 677 S.W.2d 812 (Tex. App.1984); *Professional Beauty Products, Inc. v. Derington,* 513 S.W.2d 236 (Tex.Civ. App.1974). Mantek argues that based upon these numerous Texas decisions, the territory-wide preliminary injunction must be affirmed.

We agree with Mantek that Texas law permits a court to enforce a territorial injunction in an appropriate case. That is not the issue in this case, nor was it the issue the Fifth Circuit faced in *NCH.* What we are asked to decide is whether this *particular* territorial injunction is reasonable, *i.e.,* whether this is an appropriate case. The Texas Supreme Court in the leading case of *Weatherford Oil Tool Company v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 951 (1960), held that a covenant not to compete is unreasonable, and thus unenforceable, if "it imposes upon the employee any greater restraint than is rea-

---

**13.** Share requests that the injunction be limited to customers who had previously purchased Mantek products from the defendants. We believe that there is sufficient evidence in the record for the trial judge to find that Mantek had a protectible goodwill interest in potential customers the defendants had called upon while at Mantek, even though the defendants had not yet made any sales. If, however, the trial court on remand determines that Mantek does not have a goodwill interest in these potential customers, then the trial court may further narrow the scope of the injunction to include only actual customers.

sonably necessary to protect the business and goodwill of the employer." It matters not that as an abstract principle territory-wide covenants not to complete are enforceable in Texas under some circumstances, because in this particular case the broad scope is not reasonably necessary to protect the business and goodwill of Mantek. Therefore, under settled Texas law, as set forth by the Texas Supreme Court in *Weatherford Oil*, Mantek's territory-wide covenant not to compete is unenforceable.

■ Mantek argues finally that a narrower injunction would raise "practical difficulties" and present "substantial enforcement problems." We do not believe that a plaintiff is entitled to an unreasonably broad preliminary injunction merely because a reasonable injunction is more difficult to enforce. We are particularly unwilling to allow an overly broad injunction to stand at the preliminary injunction stage because the defendant has yet to have a full hearing on the merits.

■ Restrictive covenants restrain trade and are not favored by the law, and we will enforce them only to the extent their terms are reasonable and necessary. Although a court may consider the difficulty of enforcement, in an unusual case, in determining what is reasonable and necessary, Mantek offers no convincing justification for providing it greater protection than is necessary to protect its business and goodwill in this case. Mantek's argument is undercut by the fact that Mantek's contract with the defendant Lenahan, the most recent contract of the four, only extends to accounts Lenahan solicited to, sold to, or learned of while an employee of Mantek. Lenahan's contract provides strong support for Share's contention that a territory-wide restriction is not necessary either to protect Mantek's goodwill or to protect Mantek's interest in enforcement.

■ Restrictive covenants not to compete restrain free trade and violate basic policies of individual liberty, freedom of contract, and vigorous competition. Nevertheless, in appropriate cases courts will enforce such covenants to the extent reasonably necessary to protect a former employer's business and goodwill. The covenants of defendants Denton, Roten, and Slayden go beyond the scope reasonably necessary to protect Mantek's business and goodwill. If, on remand, the trial judge decides to reinstate the preliminary injunction or to modify it, such injunction should be limited to actual customers and potential customers whom the defendants actually contacted while in Mantek's employ.

## IV.

In conclusion, we hold that the trial judge abused his discretion in refusing to consider any evidence of Share's commercial-bribery defense. We also decide that, on the facts of this case, Mantek is not entitled to a preliminary injunction extending to all potential customers in the entire territory the defendants formerly worked for Mantek. We vacate the preliminary injunction and remand this case for the trial judge to hold further proceedings consistent with this opinion. Circuit Rule 18 shall not apply on remand.

REVERSED.

GORDON, Senior District Judge, dissenting in part.

The majority concludes that by failing to receive evidence on the defendants' charge of "commercial bribery" the district court committed reversible error in granting the plaintiff's application for a preliminary injunction. I believe that conclusion to be wrong both as to law and as applied to the facts of this case. It was observed in *Aurora Bancshares Corporation v. Weston*, 777 F.2d 385, 386–87 (7th Cir., 1985) that unclean hands is a possible defense to a request for a preliminary injunction. Nevertheless, there remains broad discretion in the district court regarding the exclusion of such proffered evidence. *United States v. Zenon*, 711 F.2d 476, 478 (1st Cir.1983). The legal basis for this rule was

recently stated by this court in *Donna Shondel and Mark J. McKechnie v. Thomas M. McDermott*, 775 F.2d 859, 869–70 (7th Cir.1985):

> "In this age of legalism, when relatively few plaintiffs are wholly free from any trace of arguable misconduct at least tangentially related to the objective of their suit, the right to injunctive relief, especially to preliminary injunctive relief, would have little value if the defendant could divert the proceeding into the by-ways of collateral misconduct."

As to the application of such rule to the case at bar, the record clearly demonstrates that the district judge gave ample consideration to the relevant claims, balanced them, and then exercised the discretion vested in him. The evidentiary hearing below consumed two full days. The trial judge entertained the defendants' offer of proof regarding the plaintiff's gift-policy, and nevertheless persisted in his view that it would be "a waste of everybody's time" to explore the sales practices of this industry.

Although the defendants labeled the plaintiff's program as "commercial bribery," there is no suggestion that it was secretly or covertly pursued. Judge Noland regarded the plaintiff's practice as one comparable to the giving of small gifts or novelties; thus, he commented that he could "take judicial notice that the Fuller Brush Company has had door-to-door salesmen since the beginning of time and they have always had door openers in the form of some little gift or other."

Given the clarity of the restrictive covenants which the defendant salesmen had signed, the trial judge's exercise of discretion after a two-day evidentiary hearing can hardly be deemed to have been ill-considered or precipitous. Under these circumstances, I find no basis for an order compelling the district court to hold an additional evidentiary hearing as to a speculative, collateral defense. I therefore respectfully dissent.