J. C. MATLOCK, Jr., et al., Petitioners,

v.

DATA PROCESSING SECURITY,
INC., Respondent.

No. C–21.

Supreme Court of Texas.

March 25, 1981.

Cantey, Hanger, Gooch, Munn & Collins, Cecil E. Munn, Ralph H. Duggins, III, and Sloan B. Blair, Fort Worth, for petitioners.

McLean, Sanders, Price, Head & Ellis, Homer G. Price and Albon O. Head, Jr., Fort Worth, for respondent.

POPE, Justice.

J. C. Matlock, Jr., Thomas Bailey, Laurence B. Compton, and Total Assets Protection, Inc. appealed from a temporary injunction which prohibits their competing with Data Processing Security, Inc. anywhere in the United States. It also prohibits them from maintaining an office in the United States for the conduct of their business anywhere in the world. The court of civil appeals has affirmed the decree. 607 S.W.2d 946. We modify the overbroad parts of the decree for temporary injunction, and as modified, we affirm the temporary injunction.

Data Processing Security is in the business of providing management services and systems for the protection of their custom-

ers from crimes which relate to their computer facilities. There was testimony during a four-day hearing that Data Processing Security was the only firm in the United States providing that protective service until the organization of Total Assets Protection.

The president of Data Processing Security testified that there are more than 110,000 computer centers in the nation and the number is increasing. According to the evidence, Data Processing Security at the time of the hearing had forty customers and also a master list of five hundred clients whom it has served at some time in the past. The proof is that Data Processing Security has done business with less than two percent of the potential market. There was evidence and the trial court found that Matlock, Bailey and Compton were soliciting the customers of Data Processing Security for Total Assets Protection.

Matlock, Bailey and Compton were former key employees of Data Processing Security. Their employment contracts provided no term of employment; so they could be discharged at will. After they began their work, they were each asked to sign, and they did sign, a covenant not to compete. The covenant restricted their competition anywhere in the United States.[1] In January, 1980, they resigned, formed their own business known as Total Assets Protection, Inc. and filed this suit seeking a declaratory judgment that their covenant for noncompetition was void for a number of reasons. Data Processing Security then asked for a temporary injunction which the trial court granted, pending a trial on the merits.[2]

The purpose of a temporary injunction is to preserve the status quo pending trial on the merits, and the review on appeal is to determine whether the trial court abused its discretion. *Brooks v. Expo Chemical Co.*, 576 S.W.2d 369, 370 (Tex.1979); *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978); *Transport Co. of Texas v. Robertson Transports,*

---

1. In addition to and independent of the foregoing agreements, I further agree that I will not for a period of two years after the period of my employment by the Company, directly or indirectly in any capacity (whether as owner, partner, shareholder, agent, employee, consultant or otherwise) engage in any business which is or may be similar to or become competitive with the business now or at any time during the course of my employment conducted by the Company anywhere within the United States of America. In making the foregoing agreement, I acknowledge and confirm that the business of the Company is nationwide in scope, that customers and potential customers of the Company are located throughout the United States of America, that the location of the Company's office or offices is not a relevant factor in determining the market area for the Company's product and services, and accordingly, that the Company would be irreparably harmed if I were to compete with the Company anywhere within the United States of America within the prescribed period.

2. The court enjoined them from:
   1. Using for their own benefit in the United States or disclosing to others in the United States or anywhere else, directly or indirectly, any of the trade secrets and/or confidential business information or know-how of DPS, which includes the following:
      (a) training manuals for customers of DPS;
      (b) customer lists, specific customer information contained in sales call reports of DPS,

and any other information pertaining to customers or prospective customers of DPS.
      (c) checklists of DPS used by consultants;
      (d) engineering studies of DPS;
      (e) compilations of product research by DPS;
      (f) marketing techniques of DPS; and
      (g) tape theft system, datalock, and alarm control buffer zone system
   2. [Paragraph 2 was deleted by the trial judge.]
   3. Engaging in any business, directly or indirectly, in any capacity (whether as owner, partner, shareholder, agent, employee, consultant or otherwise) which is similar to or competitive with the business conducted by DPS anywhere within the United States of America; and
   4. Offering, selling or attempting to sell anywhere in the United States any products or services that are competitive with the products or services of DPS.

\* \* \* \* \* \*

IT IS FURTHER ORDERED that MATLOCK, BAILEY, COMPTON and TAP are enjoined from maintaining and/or operating an office or other facilities anywhere in the United States for the purpose of conducting research and development, providing marketing and sales functions, preparing and/or furnishing products or services competitive with the business conducted by DPS anywhere within or outside the United States.

*Inc.*, 152 Tex. 551, 261 S.W.2d 549 (1953). We do not now decide a number of legal questions which can be determined at the time of trial on the merits after the facts are fully developed.

We presently hold that parts of the order are overbroad or too vague. The first numbered paragraph of the order properly enjoins the former employees from using trade secrets or confidential business information, but the term "or know-how" is too vague. Paragraph 1(b) of the order suggests that the former employees may not use "any . . . information pertaining to customers or prospective customers of DPS." That restraint is similarly too vague to be enforced, and it is overbroad.

All of the injunction order except paragraph one is unenforceable because it is overbroad. It prohibits the former employees from competing anywhere and with anybody. A determination of the reasonableness of territorial restraints upon noncompetition contracts requires a balance of the interests of the employer, the employee, and the public while being "mindful of the basic policies of individual liberty, freedom of contract, freedom of trade, protection of business, encouragement of competition and discouragement of monopoly." *Fidelity Union Life Ins. Co. v. Protective Life Ins. Co.*, 356 F.Supp. 1199, 1203 (N.D.Tex.1972), *aff'd without opinion*, 477 F.2d 594 (5th Cir. 1973); *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 952 (Tex. 1960); 14 W. Jaeger, Williston on Contracts § 1643A (3d ed. 1972).

The breadth of territorial restrictions in noncompetition covenants may vary with the nature and extent of the employer's business operations. If the rule were otherwise, the public would be deprived of both the benefits of a service and the com-

petition. It is our opinion that Data Processing Security has no protectable interest in the whole territory of the United States, a market which it does not and cannot reach or serve. *Weatherford Oil Tool Co. v. Campbell, supra; Ofsowitz v. Askin Stores, Inc.*, 306 S.W.2d 923 (Tex.Civ.App.—Eastland 1957, writ ref'd).

The injunction order of the courts below is overbroad and invalid except for the part of the order which is numbered as paragraph one, as modified by this court. That part of paragraph 1(b) which enjoins Total Assets Protection, Inc. from using "any other information pertaining to customers or prospective customers of DPS" is also overbroad.[3]

Due to the exigencies of the present case, no motion for rehearing shall be heard. Tex.R.Civ.Pro. 515. The temporary injunction is affirmed as modified.

---

**3.** The order, as modified by this court, now reads:

1. Using for their own benefit in the United States, or disclosing to others in the United States or anywhere else, directly or indirectly, any of the trade secrets and/or confidential business information of DPS, which includes the following:
   (a) training manuals for customers of DPS;
   (b) customer lists, specific customer information contained in sales call reports of DPS;
   (c) checklists of DPS used by consultants;
   (d) engineering studies of DPS;
   (e) compilations of product research by DPS;
   (f) marketing techniques of DPS; and
   (g) tape theft system, datalock, and alarm control buffer zone system