ALLAN J. RICHARDSON &
ASSOCIATES, INC.,
Appellants,

v.

Edward Maurice ANDREWS, Richard
Brent Newton & Charles Alfred
Ricklin, Appellees.

No. C14–86–534–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 2, 1986.

Rehearing Denied Nov. 6, 1986.

David L. Sheller, Michol O'Connor, Houston, for appellants.

Guy Lipe, Kenneth E. Johns, Jr., Jack Urquhart, James Moore, Mark A. Salvato, Houston, for appellees.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

JUNELL, Justice.

Allan J. Richardson & Associates, Inc., appealed from a temporary injunction which prohibits three of its former employees, Edward M. Andrews, R. Brent Newton and Charles A. Ricklin, from competing with appellant in the states of Texas, Oklahoma, New Mexico, Kansas and California. The appellant corporation ("Richardson, Inc.") asserts that the trial court erred in refusing to grant a nationwide injunction and in refusing to enjoin the former employees from disclosing confidential information. Finding that the trial court did not abuse its discretion, we affirm.

Richardson, Inc., is engaged in the business of structuring settlements in personal injury cases. The business is highly competitive; there are twenty such firms contending for the same clients. These clients are liability insurance companies, self-insured companies and defense attorneys. Much of the service performed by the company can be done by telephone so that it is possible that a nationwide operation could be conducted from corporate headquarters. The home office of Richardson, Inc., is in Houston, Texas; branch offices are located in California, Illinois and Missouri. The former employees all worked out of the Houston office.

Richardson, Inc., requires every employee engaged in the sale of structured settlements to sign an employment contract in which he agrees that during his employment and for two years thereafter he will not use or disclose any trade secret or confidential information and he will not engage in any business in competition with Richardson, Inc. Each of the appellees signed such a contract. Each appellee is no longer employed by Richardson, Inc. An acknowledged competitor, Merrill Lynch Settlement Services, Inc., interviewed appellees Brent Newton and Charles Ricklin while they were employed by Richardson, Inc. The evidence admitted at the temporary injunction hearing included a letter from Merrill Lynch to Brent Newton confirming his title, salary and employment starting date with Merrill Lynch. The employment terms included a promise to defend Mr. Newton should Richardson, Inc., seek to enforce the non-competition clause in Mr. Newton's contract with that firm. Although Merrill Lynch made no employment offer to Mr. Ricklin, it is paying for his defense as well as Mr. Newton's. The third appellee, Edward Andrews was hired by Galaher Insurance and Settlement Services, Inc., another competitor in the structured settlement field. He will work in Boston, Massachusetts, in making annuity calculations; he will not make sales.

The purpose of a temporary injunction is preservation of existing conditions until the case can be tried on its merits. *Matlock v. Data Processing Security, Inc.*, 618 S.W.2d 327, 328 (Tex.1981). It should not be granted unless the applicant shows a probable right to permanent relief upon a trial on the merits and also a probable injury during the pendency of the trial unless the injunction issues. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968). On appeal the judgment of the trial court will not be disturbed unless it represents a clear abuse of discretion. *Id.* at 218.

We do not now decide the law of the case but leave the determination of the primary issues for the trial on the merits after the facts are fully developed.

■ Covenants not to compete restrain trade and often place severe restrictions upon the employment opportunities available to the former employee. Such a covenant will be enforced against the employee only to the extent reasonably necessary to protect the business and goodwill of the employer. *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 312, 340 S.W.2d 950, 951 (1960). A restraint of trade is unreasonable if the restriction is greater than necessary to protect the petitioner or if it imposes an undue hardship on the person restricted. *Id.*, 340 S.W.2d at 951. The employer bears the burden of proving the necessity for and the reasonableness of the non-competition agreement. *Martin v. Linen Systems for Hospitals*, 671 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1984, no writ). Richardson, Inc., met its burden of showing necessity, reasonableness and probable injury only to a limited degree.

In its first point of error appellant Richardson, Inc., contends that the trial court erred in refusing to grant a nationwide injunction against former employees as provided in the employment contracts.

■ The breadth of enforcement of territorial restraints in non-competition contracts depends upon the nature and extent of the employer's business and the degree of the employee's involvement. *Matlock*, 618 S.W.2d at 329. The covenant must bear some relationship to the activities of the employee; if it is overbroad, the court may reform its terms to make them reasonable. *Martin*, 671 S.W.2d at 709.

■ From the conflicting evidence presented at the temporary injunction hearing the trial court could reasonably have concluded that although the appellees had solicited customers on a nationwide basis, the overwhelming majority of actual sales accomplished by salesmen in the Houston office were to clients in Texas, Oklahoma, New Mexico, Kansas and California. Contacts with potential customers in other states had resulted in only four sales by

Ricklin; there was no evidence of sales outside the five state area made by Newton or Andrews. Richardson, Inc., failed to prove the requisite probable injury to the corporation to justify a nationwide injunction. The trial court did not abuse its discretion in restraining appellees from competing with appellant in the states of Texas, Oklahoma, New Mexico, Kansas and California only. Appellant's first point of error is overruled.

■ In contrast to the appellant's contention that the injunctive restraint is too narrow, appellee Ricklin complains by crosspoint that the order enjoining the appellees from competing with appellant in the five state area is too broad as to Ricklin and should be reduced to the Houston area only. The evidence, Ricklin contends, failed to establish that Ricklin had any special influence over existing and potential clients of Richardson, Inc., outside greater Houston and that an injunction beyond that area constitutes an abuse of discretion. We disagree. Mr. Ricklin worked in the home office from which appellant's client base was developed. Mr. Roy Johnson, chief executive officer of Merrill Lynch Settlement Services, Inc., testified by deposition that Mr. Ricklin's client contacts made him attractive to Merrill Lynch. Mr. Johnson admitted that he assumed when he interviewed his competitor's employees that both Mr. Ricklin and Mr. Newton possessed proprietary information of Richardson, Inc. Even if that information could be obtained by independent research, we see no abuse of discretion in the trial court's order to restrain Mr. Ricklin, as well as Mr. Newton and Mr. Andrews, from soliciting his former employer's established clients. Under the circumstances the advantage obtained by competitors of Richardson, Inc., would be unfair.

■ In a related crosspoint appellee Newton argues that the partial injunction restricts competition more than is reasonably necessary to protect the goodwill of appellant. As has been previously stated, the majority of appellant's business was derived from the five state area. Appellee Newton was Richardson, Inc.'s top salesman. He was offered a position by an acknowledged competitor whose home office is in the five state area. The opportunity for substantial harm to both the business and the goodwill of appellant is readily apparent.

The probable injury to Richardson, Inc., during the pendency of the case outweighs the hardship to appellees who voluntarily signed a contract agreeing not to compete. The crosspoints of Mr. Ricklin and Mr. Newton are overruled.

In its second point of error appellant corporation contends that the trial court erred in refusing to enjoin the former employees from disclosing confidential information. We disagree.

The employment contract of each appellee contained the following provision:

3. Employee agrees that for the period of the employment and for a period of two (2) years after the termination of the employment that the employee shall not disclose to any third person or party or use for his own benefit any trade secret or confidential information or data regarding the business of the corporation and its customers and markets.

The Supreme Court of Texas has accepted the definition of a trade secret recited in Restatement of Torts § 757:

b. Definition of trade secret. A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers....

*Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, 776 (1958).

Richardson, Inc., urges that its client lists, marketing techniques and business plans are trade secrets within the definition and are thus entitled to protection by injunction.

■ It is obvious from the conditional language in the definition "[A trade secret] *may be ...* a list of customers," that trade secret status does not automatically attach to a client list. To be accorded the court's protection the proprietary information must be more than merely of a kind and character encompassed by the definition. It must be information that is not publicly available or readily ascertainable by independent investigation. *SCM Corp. v. Triplett Co.*, 399 S.W.2d 583, 586 (Tex.Civ. App.—San Antonio, 1966, no writ).

■ The evidence presented at the temporary injunction hearing supports the conclusion that the information which Richardson, Inc., seeks to protect is readily ascertainable and therefore not a trade secret or confidential information. Mr. Robert E. Galaher, vice president of Galaher Insurance and Settlement Services, Inc., testified that he did not consider his own client list confidential and he could easily discover the clients of Richardson, Inc., by asking potential customers with which company they have previously done business. Likewise, Mr. Galaher did not consider that names of key people whom he would contact in the client companies to be confidential. Mr. John Wendell, a present employee and salesman for Richardson, Inc., testified that the potential clients of structured settlement companies are readily available to the general public in directories. He further testified that there were no secrets as to which markets Richardson, Inc., used; most structured settlement companies use the same markets. ("Markets" are the insurance companies that sell the annuities used in structured settlements.) As for sales techniques, Mr. Wendell stated that no strategy had been developed for the company as a whole. Each salesman for Richardson, Inc., developed his own technique. Finally, with respect to business plans, Mr. Wendell knew of no definite plans for expansion and was not aware of any document concerning business strategy.

Appellant attempts to distinguish *SCM Corp.* and *Research Equipment Co. v.*

*Galloway,* 485 S.W.2d 953 (Tex.Civ.App.—Waco 1972, writ dism'd), two cases cited by appellees where the courts denied trade secret status to client lists. Appellant argues that in these cases the courts were not called upon to enforce a contractual right; the courts were instead applying a common law theory of unfair competition. The theory applied by the courts in these cases did not alter or circumvent the definition of trade secret. In *SCM Corp.* and in *Research Equipment Co.*, as in the present matter, the facts did not justify application of the status. The definition, set forth above, requires that the information be that which gives "an advantage over competitors who do not know or use it." Even in the vernacular the word *secret* implies that the information is not generally known or readily available. Appellant's second point of error is overruled.

■ Appellee Newton presented a second crosspoint of error asserting that the covenant not to compete is "void on its face." In support of his contention he cites three cases from the Supreme Court of Texas: *Frankiewicz v. National Comp Associates,* 633 S.W.2d 505 (Tex.1982); *Matlock v. Data Processing Security, Inc.,* 618 S.W.2d 327 (Tex.1981); and *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950 (1960). These cases do not hold, as appellee suggests, that an employment contract containing an overbroad provision is "void on its face." Instead of invalidating a non-competition agreement whose restrictions are excessive, the Texas courts have usually reformed the contract, reducing the provisions to that which is reasonable in duration and area under the circumstances. *See Frankiewicz v. National Comp Associates,* 633 S.W.2d 505 (Tex.1982); *Matlock v. Data Processing Security, Inc.,* 618 S.W.2d 327 (Tex.1981); *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950 (1960); *Lewis v. Krueger, Hutchinson and Overton Clinic,* 153 Tex. 363, 269 S.W.2d 798 (1954); *Williams v. Compressor Engineering Corp.,* 704 S.W.2d 469 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Martin*

*v. Linen Systems for Hospitals, Inc.,* 671 S.W.2d 706 (Tex.App.—Houston [1st Dist.] 1984, no writ).

Appellee Newton's crosspoint is without merit and is overruled.

The order of the trial court granting the temporary injunction is affirmed.