Robert J. SPICER, et al., Appellants,

v.

TACITO & ASSOCIATES,
INC., Appellee.

No. 05–88–01427–CV.

Court of Appeals of Texas,
Dallas.

Oct. 25, 1989.

Tom S. McCorkle, Dallas, for appellants.

Charles J. Paternostro, Dallas, for appellee.

Before ENOCH, LAGARDE and KINKEADE, JJ.

## OPINION

KINKEADE, Justice.

Robert J. Spicer and Dean Tilden appeal from a judgment granting injunctive relief and damages to Tacito & Associates, Inc. based upon the breach of an employee noncompetition covenant. Spicer and Tilden argue that their engagement in a common calling renders the noncompetition covenant unreasonable and unenforceable and that they failed to receive good and valuable consideration for their execution of the covenant. Further, Spicer and Tilden argue that there was insufficient evidence introduced to allow for the recovery of lost

profits by Tacito. Because Tacito employed Spicer and Tilden as salesmen, a common calling, and because they received no special or unique training or knowledge which takes them out of this classification, we hold the employee noncompetition clause unenforceable. We reverse and render.

## FACTS

Tacito & Associates provides sales promotional packages and services through direct mail advertising to new car dealers nationwide. Tacito hired Spicer and Tilden to sell these promotional packages and services. At the time Tacito hired Spicer and Tilden, it required neither of them to sign an employee noncompetition agreement. Spicer and Tilden received, during their employment, ongoing information regarding the various sale techniques needed to sell Tacito's product. Several months after hiring Spicer and Tilden, Tacito required its sales staff to sign an employee noncompetition agreement. The pertinent clause within the agreement provided:

3. *NONCOMPETITION BY EMPLOYEE AFTER TERMINATION OF EMPLOYMENT.* Employee covenants and agrees that, upon termination of his employment with Employer, for any reason whatsoever, Employee shall not, directly or indirectly, within the then existing marketing area of the Employer or any future marketing area entered by Employer during the term of his employment with Employer, enter into or engage generally in competition with Employer, either as an individual on his own or as a partner or joint venturer, or as an agent for any person, or as an officer, director or shareholder or otherwise, for a period of eighteen (18) months after the date of termination of his employment with Employer.

Spicer began work for Tacito on August 1, 1985. Prior to that time, Spicer worked in several capacities within the automobile sales industry. For various dealerships he served as a general sales manager, new car sales manager, new truck sales manager, business manager, and salesman. On No-vember 17, 1986, in order to receive his paycheck held by Tacito for two days, Spicer signed the employee noncompetition agreement. Spicer left Tacito's employ on February 28, 1987, and began work for a competitor. Subsequently, Spicer opened a business which offered the same type of sales promotions to automobile dealerships as Tacito.

Tilden began work for Tacito on May 12, 1986. Prior to that time, Tilden worked as a rock concert promoter selling musical promotions. He also worked in various capacities as a computer salesman with Tandy Corporation. On September 8, 1986, with a belief that a failure to sign meant subsequent unemployment, Tilden signed the same type of noncompetition agreement which Spicer later signed. Tilden left Tacito's employ within thirty days of Spicer and went to work doing the same type of automobile dealership sales promotions for a competitor. Tilden now works for Spicer.

## COVENANTS NOT TO COMPETE

In their first point of error, Spicer and Tilden argue that their engagement in a common calling renders the noncompetition covenant unenforceable. In Texas covenants not to compete are unenforceable when they restrict the right to engage in a "common calling." *Bergman v. Norris of Houston,* 734 S.W.2d 673, 674 (Tex. 1987); *Hill v. Mobile Auto Trim Inc.,* 725 S.W.2d 168, 172 (Tex.1987). Whether an employee engages in a "common calling" is a question of law determined by the facts of the individual case. *Bergman,* 734 S.W.2d at 674. The Texas Supreme Court determined that a salesman engages in a common calling. *See Martin v. Credit Protection Ass'n, Inc.,* 31 Tex.Sup.Ct.J. 626 (July 13, 1988). The court suggested that a common calling consists of activities that do not require extensive, highly sophisticated training in a complex field. McKelvey, *Post Employment Noncompetitive Restrictive Covenants in Texas,* 30 S.Tex. L.Rev. 1, 93–94 (1988). Generally, a salesman's job tends to consist of repetitive noncomplex activities, such as calling on customers, soliciting orders, maintaining good

customer relations, and following up on sales. *Id.* at 94.

In *Martin,* the salesman received no trade secrets or any specialized knowledge or training. Tacito contends that its salesmen receive specialized training and knowledge and, thus, differ from the salesman discussed in *Martin.* Accordingly, Tacito urges that because its salesmen receive specialized training and knowledge they fall outside of a common calling.

Tacito mistakenly relies on *Martin.* In *Martin,* the court held that customer information constitutes neither specialized knowledge nor training. *Martin,* 31 Tex. Sup.Ct.J. 626. Anthony J. Tacito, president of Tacito, testified that by requiring its employees to enter into a noncompetition agreement Tacito primarily sought to protect the information that it imparts to them. Tacito sought to protect the dealer files, the dealer contacts, the names of the people the salesmen contact, the names of the dealerships, and the frequency of usage of invitational sales. The information which Tacito wanted to protect constituted customer information and amounted to neither specialized training nor knowledge. *Martin v. Credit Protection Ass'n, Inc.,* 31 Tex.Sup.Ct.J. at 626.

 Anthony J. Tacito stated that, as another purpose of the noncompetition agreement, Tacito wanted to protect the trade secrets it imparted to its employees. Although unclear from the record and Tacito's brief, Tacito apparently considers as trade secrets the dealer procedure manual and other promotional materials given to the dealers. Spicer and Tilden admit copying this material almost verbatim. Trade secrets consist of information not publicly available or readily ascertainable by independent investigation. *Allan J. Richardson & Assocs., Inc., v. Andrews,* 718 S.W.2d 833, 837 (Tex.App.—Houston [14th Dist.] 1986, no writ). Anthony J. Tacito testified that in the past Tacito provided promotions for between fifteen hundred and two thousand dealers. All of these dealers received the dealer procedure manual and other promotional information.

Accordingly, this publicly available material contained no trade secrets.

Spicer and Tilden engaged in a common calling and received no specialized training or knowledge that takes them out of this classification; therefore, the noncompetition agreement is unenforceable. Accordingly, we sustain Spicer and Tilden's first point of error and need not address Spicer and Tilden's other points of error. We reverse and render.