TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00359-CV






Bandit Messenger of Austin, Inc., Appellant



v.



Robert L. Contreras, d/b/a Delivery Depot and/or Courier Depot

and/or Courier Depot, Ltd.
, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. GN0-01237, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 Bandit Messenger of Austin, Inc. (Bandit) appeals from the trial court's denial of
a temporary injunction by which Bandit sought to restrain Robert L. Contreras from operating or
participating in a competing business in the Austin area. We will affirm the trial court's order.


Factual and Procedural Background



 Since 1985, Bandit has delivered parcels by courier in and around Austin. Bandit's 
employees perform office duties; independent-contractor drivers physically deliver the parcels. 
Bandit hired Contreras in April or May of 1989 as an administrative clerk. In June 1989,
Contreras signed an employment agreement containing a "covenant not to compete" and a non-disclosure clause. After a few months of working as an administrative clerk, Contreras became
a full-time driver and signed an independent-contractor agreement, also containing these clauses
(the "employment agreement"). In 1996, Contreras became Bandit's office manager. He signed
no additional employment agreements. Contreras left Bandit in February 2000 to start his own
delivery business in Austin.

 On April 27, 2000, Bandit obtained an ex parte temporary restraining order, which
was dissolved at a hearing on May 2, 2000. On May 4, 2000, the trial court held a hearing on
Bandit's request for a temporary injunction, which the court denied.(1) In one issue on appeal,
Bandit contends that the trial court abused its discretion in denying its requested temporary
injunction. We will affirm the trial court's judgment


Discussion



Temporary Injunction

 To obtain a temporary injunction, a litigant need only show a probable right to
recover at a final trial on the merits and probable injury in the interim. See Hill v. Mobile Auto
Trim., Inc., 725 S.W.2d 168, 172 (Tex. 1987); Transport Co. v. Robertson Transp., Inc., 261
S.W.2d 549, 552 (Tex. 1953); Texas Alcoholic Beverage Comm'n v. Amusement & Music
Operators of Texas, Inc., 997 S.W.2d 651, 657 (Tex. App.--Austin 1999 pet. dism'd w.o.j.). The
applicant for a temporary injunction does not have to prove that it will finally prevail in the
litigation. Transport Co., 261 S.W.2d at 552; Franklin Sav. Ass'n v. Reese, 756 S.W.2d 14, 15
(Tex. App.--Austin 1988, no writ). The purpose of a temporary injunction is to preserve the
status quo pending trial on the merits. Walling v. Metcalfe, 863 S.W.2d 56, 57-58 (Tex. 1993);
Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); Transport Co., 261 S.W.2d at 552. The
decision of the trial court will not be reversed on appeal unless the appellate court determines that
the trial court clearly abused its discretion. Davis, 571 S.W.2d at 861-62; Sun Oil Co. v.
Whitaker, 424 S.W.2d 216, 218 (Tex. 1968); Amusement & Machine Operators, 997 S.W.2d at
654. An abuse of discretion does not exist when the trial court bases its decision on conflicting
evidence. General Tire, Inc. v. Kepple, 970 S.W.2d 520, 526 (Tex. 1998); Davis, 571 S.W.2d
at 862; Hart v. Wright, 16 S.W.3d 872, 875 (Tex. App.--Fort Worth 2000, pet. filed); Forsyth
v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 149 (Tex. App.--Austin 1995, writ dism'd w.o.j.). The
appellate court must draw all reasonable inferences from the evidence in a light most favorable to
the trial court's decision. 2300, Inc. v. City of Arlington, 888 S.W.2d 123, 126 (Tex. App.--Fort
Worth 1994, no writ); Hartwell's Office World, Inc. v. Systex Corp., 598 S.W.2d 636, 638 (Tex.
Civ. App.--Houston [14th Dist.] 1980, writ ref'd n.r.e.). The merits of the cause are not
presented for review. Davis, 571 S.W.2d at 862; Public Util. Comm'n v. General Tel. Co., 777
S.W.2d 827, 829 (Tex. App.--Austin 1989, writ dism'd).

 

Enforcement of the Covenant Not to Compete


 Covenants not to compete are restraints of trade and disfavored in law. Travel
Masters, Inc. v. Star Tours, Inc., 827 S.W.2d 830, 832 (Tex. 1991); Miller Paper Co. v. Roberts
Paper Co., 901 S.W.2d 593, 599 (Tex. App.--Amarillo 1995, no writ). Covenants not to
compete may be enforced, however, if they meet certain criteria. They must first be ancillary to
or part of an otherwise enforceable agreement at the time the agreement was made. Tex. Bus. &
Com. Code Ann. § 15.50(a) (West Supp. 2000); Light v. Centel Cellular Co., 883 S.W.2d 642,
644 (Tex. 1994); Miller Paper Co., 901 S.W.2d at 599. Second, any limitations as to time,
geographic area, and scope of activity contained therein must be reasonable and no greater than
that needed to protect the goodwill or other business interests of the employer. Tex. Bus. & Com.
Code Ann. § 15.50(a) (West Supp. 2000); Light, 883 S.W.2d at 644; Miller Paper Co., 901
S.W.2d at 599. An at-will employment relationship cannot form an otherwise enforceable
agreement to which a covenant not to compete can append. Light, 883 S.W.2d at 644-45; Travel
Masters, 827 S.W.2d at 832-33; Miller Paper, 901 S.W.2d at 599. In an at-will employment
relationship, any promise depending on commencement and continuation of employment is illusory
and unenforceable at the time of contracting. Light, 883 S.W.2d at 645; CRC-Evans Pipeline
Int'l, Inc. v. Myers, 927 S.W.2d 259, 263 (Tex. App.--Houston [1st Dist.] 1996, no writ); Miller
Paper Co., 901 S.W.2d at 599. It is possible, however, in the context of an at-will employment
relationship to exchange non-illusory promises that will support a covenant not to compete. See
Light, 883 S.W.2d at 644; Curtis v. Ziff Energy Group, Ltd., 12 S.W.3d 114, 118 (Tex.
App.--Houston [14th Dist.] 1999, no pet.); Ireland v. Franklin, 950 S.W.2d 155, 158 (Tex.
App.--San Antonio 1997, no writ); CRC-Evans Pipeline, 927 S.W.2d at 263-64.

 A promise by the employer to give an employee trade secrets in return for the
employee's promise to keep them secret has been found to be one type of non-illusory promise that
can support a covenant not to compete. Curtis, 12 S.W.3d at 118; Ireland, 950 S.W.2d at 158. 
The employment agreement was in evidence in this case. It is somewhat vague, however. It
speaks of the employee having access to such information but does not affirmatively obligate
Bandit to provide such information to the particular employee signing the agreement. The non-disclosure clause is the only term that could form an "otherwise enforceable agreement"; there are
no other promises that would not be contingent on continued employment and it is undisputed that
Contreras was an employee at will.

 Martin Huber, Bandit's president, was asked what Contreras received in return for
his promise not to compete and he answered that Contreras received a job and a salary. He
admitted that the business had a high turnover rate, and he had never before taken any steps to
follow up on any other employees after they left; he agreed that some of them had probably gone
to work for competitors. Contreras testified that he had access to the allegedly protected
confidential information from the day he started work, before he signed the employment
agreement.

 Construing the record in favor of the trial court's ruling, the trial court could have
concluded that the plaintiff company had not met its burden of showing it was likely to prevail in
establishing that a valid covenant not to compete existed. The court could have concluded that
there were no actual non-illusory promises exchanged; therefore, no "otherwise enforceable
agreement" existed and Bandit was trying to tie the enforceablilty of the covenant to an at-will
employment relationship. The court could have concluded that the lapse in time between
Contreras's initial employment and the signing of the agreement meant that there was no
"otherwise enforceable agreement at the time the contract was made" because the only possible
consideration (disclosure of trade secrets) had already occurred and past consideration could not
support Contreras's return non-disclosure promise. See CRC-Evans Pipeline, 927 S.W.2d at 265. 
There was evidence to support at least one possible theory that Bandit had not met his burden to
show a likelihood of prevailing.


Customer List


 Bandit argues that, even if the covenant not to compete is invalid, the use of its
customer list is still prohibited either by the non-disclosure clause in the employment agreement
or by a common-law duty. A trade secret is broadly defined to include any formula, pattern,
device or compilation of information that is used in one's business and which gives one an
opportunity to obtain an advantage over competitors who do not know or use it. Computer Assocs.
Int'l v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1994); John Paul Mitchell Sys. v. Randalls Food
Markets, Inc., 17 S.W.3d 721, 738 (Tex. App.--Austin 2000, pet. filed); Evan's World Travel,
Inc. v. Adams, 978 S.W.2d 225, 231 (Tex. App.--Texarkana 1998, no pet). A trade secret must
be information that is not publicly available or readily ascertainable by independent investigation. 
Allan J. Richardson & Assocs., Inc. v. Andrews, 718 S.W.2d 833, 837 (Tex. App.--Houston [14th
Dist.] 1986, no writ); SCM Corp. v. Triplett Co., 399 S.W.2d 583, 586 (Tex. Civ. App.--San
Antonio 1966, no writ). A customer list can be a trade secret. Miller Paper Co., 901 S.W.2d at
601; Allan J. Richardson, 718 S.W.2d at 837; SCM, 399 S.W.2d at 586. However, trade secret
status does not automatically attach to customer lists. Allan J. Richardson, 718 S.W.2d at 837. 
In order for a customer list to be deemed a trade secret, there must be a substantial element of
secrecy. American Precision Vibrator Co. v. National Air Vibrator Co., 764 S.W.2d 274, 276
(Tex. App.--Houston [1st Dist.] 1988, no writ); see T-N-T Motorsports v. Hennessey Motorsports,
Inc., 965 S.W.2d 18, 22 (Tex. App.--Houston [1st Dist.] 1998, no pet.). The one possessing
confidential information must take steps to protect it. American Precision Vibrator Co., 764
S.W.2d at 276; see T-N-T Motorsports, 995 S.W.2d at 22. A common-law duty not to use
confidential or proprietary information acquired during the relationship in a manner adverse to the
employer arises when the employment relationship begins. T-N-T Motorsports, 995 S.W.2d at 21-2; Miller Paper Co., 901 S.W.2d at 600.

 Huber testified that he had a customer list, that he would not disclose it to
competitors, and that he took measures to keep it secret. He gave no specifics, however.(2) As
noted above, he had never before taken steps to ascertain whether such information might be being
used by other former Bandit employees and drivers. Contreras disputed that the list was
confidential. He testified that the customer base for such a delivery service is commonly known. 
He testified he had access to this information before he signed any agreements. He also testified
that, as office manager, he had never been instructed to have all employees sign non-disclosure
agreements; it was left to his discretion whether such agreements were signed.

 The court had before it evidence from which it could have concluded either that 
Bandit had no proprietary confidential customer list as such or that Bandit never took adequate
steps to protect that information and it lost protection for it. Either theory would support a
holding that Bandit had not established a likelihood of prevailing on the merits.

 Finally, there was also some vigorously disputed evidence concerning the injury
to Bandit. Huber testified about his estimate of lost business. Contreras claimed that Bandit had
been having fairly severe problems before he left. He said that many paychecks, including some
of his, were late in being issued and then bounced, causing Bandit to have problems retaining
drivers and thus serving customers. Bandit's president admitted to some problems, but also
elicited an admission from Contreras that all checks were eventually honored. The court could
have concluded that any drop in Bandit's business was more a result of ongoing problems than of
Contreras's competing business; thus, on the merits, Bandit might not be able to establish that
Contreras was the cause of any injury.


Conclusion



 We do not review the case on its merits; our review is confined to whether the trial
court abused its discretion in granting or denying the temporary injunction based on the record
developed for the temporary injunction. The evidence was disputed; there is evidentiary support
from which the trial court could have concluded that Bandit did not meet its burden to secure a
temporary injunction. Accordingly, we affirm the trial court's order.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: October 26, 2000

Do Not Publish


1. Bandit requested findings of fact and conclusions of law, which the court did not make. 
Bandit did not, however, file a notice of past due findings and conclusions. Tex. R. Civ. P. 297;
Las Vegas Pecan & Cattle Co. v. Zavala County, 682 S.W.2d 254, 255-56 (Tex. 1984).
2. Compare Huber's testimony to the testimony about the measures that another business took
to protect its confidential information. T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.,
965 S.W.2d 18, 22-23 (Tex. App.--Houston [1st Dist.] 1998, no pet.). Computers containing
certain information concerning specifics of the confidential customer and vendor information were
located in a locked room separate from most of the employees and not all employees were trained
to use these systems. Id. at 23. Although Hennessey purchased lists of new vehicle buyers from
an outside source, that information was contained in a separate database from the customer list. 
Id. Hennessy's shop was at an airplane hanger in a remote location with a code-operated secured
access gate. Certain components were kept in a separate area from the rest of the shop. Id.


Richardson, 718 S.W.2d at 837. 
In order for a customer list to be deemed a trade secret, there must be a substantial element of
secrecy. American Precision Vibrator Co. v. National Air Vibrator Co., 764 S.W.2d 274, 276
(Tex. App.--Houston [1st Dist.] 1988, no writ); see T-N-T Motorsports v. Hennessey Motorsports,
Inc., 965 S.W.2d 18, 22 (Tex. App.--Houston [1st Dist.] 1998, no pet.). The one possessing
confidential information must take steps to protect it. American Precision Vibrator Co., 764
S.W.2d at 276; see T-N-T Motorsports, 995 S.W.2d at 22. A common-law duty not to use
confidential or proprietary information acquired during the relationship in a manner adverse to the
employer arises when the employment relationship begins. T-N-T Motorsports, 995 S.W.2d at 21-2; Miller Paper Co., 901 S.W.2d at 600.

 Huber testified that he had a customer list, that he would not disclose it to
competitors, and that he took measures to keep it secret. He gave no specifics, however.(2) As
noted above, he had never before taken steps to ascertain whether such information might be being
used by other former Bandit employees and drivers. Contreras disputed that the list was
confidential. He testified that the customer base for such a delivery service is commonly known. 
He testified he had access to this information before he signed any agreements. He also testified
that, as office manager, he had never been instructed to have all employees sign non-disclosure
agreements; it was left to his discretion whether such agreements were signed.

 The court had before it evidence from which it could have concluded either that 
Bandit had no proprietary confidential customer list as such or that Bandit never took adequate
steps to protect that information and it lost protection for it. Either theory would support a
holding that Bandit had not established a likelihood of prevailing on the merits.

 Finally, there was also some vigorously disputed evidence concerning the injury
to Bandit. Huber testified about his estimate of lost business. Contreras claimed that Bandit had
been having fairly severe problems before he left. He said that many paychecks, including some
of his, were late in being issued and then bounced, causing Bandit to have problems retaining
drivers and thus serving customers. Bandit's president admitted to some problems, but also
elicited an admission from Contreras that all checks were eventually honored. The court could
have concluded that any drop in Bandit's business was more a result of ongoing problems than of
Contreras's competing business; thus, on the merits, Bandit might not be able to establish that
Contreras was the cause of any injury.


Conclusion



 We do not review the case on its merits; our review is confined to whether the trial
court abused its discretion in granting or denying the temporary injunction based on the record
developed for the temporary injunction. The evidence was disputed; there is evidentiary support
from which the trial court could have concluded that Bandit did not meet its burden to secure a
temporary in